# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Lenoir*, 2013 IL App (1st) 113615

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MILTON LENOIR, Defendant-Appellant. |
| District & No. | First District, Third Division <br> Docket No. 1-11-3615 |
| Filed | March 29, 2013 |
| Held <br> (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Although defendant's sentencing and the determination of mandatory supervised release were complicated by the fact that defendant was on bond on a separate felony charge when he was arrested for the instant offense, the appellate court upheld the three-year term of MSR imposed on defendant as a Class X offender, despite his contention that the instant offense was only a Class 2 felony that was subject to a two-year term of MSR, since defendant was sentenced as a Class X offender because of his background; however, his term was reduced by 309 days to reflect additional days of credit for presentence incarceration he was entitled to as part of his plea bargain. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-18925; the Hon. Domenica Stephenson and the Hon. Matthew E. Coghlan, Judges, presiding. |
| Judgment | Affirmed as modified. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Todd T. McHenry, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE PIERCE delivered the judgment of the court, with opinion.

Justices Sterba and Hyman concurred in the judgment and opinion.

## OPINION

¶ 1    This appeal involves two issues: (1) whether defendant, Milton Lenoir, received the benefit of his negotiated plea agreement calling for credit for time served in custody prior to entering his guilty plea, and; (2) whether, as a defendant eligible for sentencing as a Class X offender, the mandatory supervisory release term is that dictated by the underlying felony or the term mandated under the Class X sentencing statute (730 ILCS 5/5-4.5-95(b) (West 2010)). For the following reasons, we affirm in part and pursuant to our authority under Illinois Supreme Court Rule 615(b)(4), modify and reduce defendant's sentence to 6 years and 56 days' imprisonment.

¶ 2                              BACKGROUND

¶ 3    Defendant was on bond on a separate felony charge, No. 08 C6 60762, when he was arrested for the instant offense and subsequently charged with two counts of unlawful use or possession of a weapon by a felon and four counts of aggravated unlawful use of a weapon. On July 22, 2011, defendant pled guilty and was sentenced in No. 08 C6 60762 to 7 years' imprisonment with credit for 633 days of presentence custody.

¶ 4    On August 15, 2011, defendant pled guilty, in this case, to unlawful use or possession of a weapon by a felon. Judge Domenica Stephenson was advised of the terms of the negotiated plea agreement. Judge Stephenson informed defendant that the parties had agreed that, although the charge of unlawful use or possession of a weapon is a Class 2 felony, because of his background defendant would be sentenced as a Class X offender to seven years' imprisonment followed by 3 years of mandatory supervised release (MSR). In addition, the court informed defendant that he would be required to pay fines and costs in the amount of $405 and would be given 309 days of presentence credit. Defendant indicated that this was his understanding of the agreement.

¶ 5    After defendant formally entered his plea of guilty, the court again explained to defendant that he was being sentenced as a Class X offender based on his background and that the

possible sentence was 6 to 30 years and a fine up to $25,000, as well as 3 years of MSR. Defendant indicated that he understood that he had the right to continue to plead not guilty and require the State to prove him guilty beyond a reasonable doubt. The court further explained to defendant that he would receive seven years' imprisonment consecutive to the sentence he received in No. 08 CR 60762. The court then obtained defendant's affirmance to the waiver of his trial rights.

¶ 6     A factual basis for the plea was provided and the court found that a factual basis for the plea existed. The court entered a finding of guilty of unlawful use or possession of a weapon by a felon and entered judgment on the finding. Defendant waived his right to a presentence investigation report and the court immediately moved to sentencing.

¶ 7     In aggravation, the State informed the court that defendant had nine prior felony convictions dating back to the late 1980s. Defendant offered nothing in mitigation. The court then sentenced defendant to 7 years' imprisonment to be served at 50% followed by 3 years of MSR, 309 days time considered served, and $405 in fines and fees, to be served consecutive to the sentence imposed in No. 08 CR 60762. The court informed defendant of his appeal rights.

¶ 8     Sometime after he began serving his sentence, defendant was told by the Department of Corrections that he was not going to receive the agreed-upon 309 days' credit because he was already receiving this credit against the sentenced imposed in No. 08 CR 60762. Not knowing the proper procedure, defendant filed a timely motion to withdraw his guilty plea and a motion to correct his mittimus. He alleged that he did not receive the credit for 309 days in presentence custody which was agreed to in this case. Defendant claimed that between his two cases, this case and No. 08 C6 60762, he was entitled to 942 days credit: 633 days he received in No. 08 C6 60762 plus 309 days he received in this case.

¶ 9     These motions were heard by Judge Matthew Coghlan. Defendant, *pro se*, explained that he had not filed a grievance or appeal with the Department of Corrections requesting that it recalculate his presentence credit and he filed both motions because he was not sure how to proceed. After the court reviewed defendant's Department of Corrections calculation sheet and his court file, the following colloquy was had:

"THE COURT: So you do not get double credit. You don't get 309 on the first one, plus 633 on the second one.

You pled guilty on July 22nd of 2011 on the case in front of Judge Panicchi [*sic*].

DEFENDANT: Yes, sir.

THE COURT: You were in custody already on this case when you did that.

DEFENDANT: Yes.

THE COURT: So you're not going to get double credit for the time up to the 22nd. You already got credit for that.

But then you pled guilty in this case on August 15th. So that would be an additional 24 days.

DEFENDANT: Okay.

THE COURT: So you would get an aggregate credit of 657 days. That's the 633 you

got from Judge Panicchi [*sic*], plus the 24, for 657.

THE DEFENDANT: Okay.

THE COURT: If you wish, I will issue a corrected mittimus giving you 657 days of aggregate credit reflecting that this case is consecutive to the other one.

DEFENDANT: Okay.

THE COURT: So you'll get–because they don't get counted twice. Do you understand that?

DEFENDANT: Right. I thought–because what I had thought, my understanding was, is like when I copped out, it's [*sic*] an order in there that said I get credit for the 309. That's what I thought when I took the plea. I thought I was going to get credit for 309 days. My out date is 2019 right now, but my understanding is that I would get that credit, but I didn't know.

When I took the plea–

THE COURT: Well, technically you got that credit, by some of it you were in custody on the other one as well. So it's not double time credit.

DEFENDANT: I didn't know that. Yeah, I didn't know. I guess I didn't understand because Jeff told me something different, my lawyer, that I had at that time. He told me, oh, you're going to get this time. He said the 600 and you put that together. That was my understanding of what he told me.

Then I have a letter from him too saying that because I had wrote him and I asked him why didn't I get this 309 days. He said, well, you should get it. He said, if you want me to, I can get it back in court. I told him I already filed it because I didn't have no more money to give to him. So that's what I had thought. I didn't know when I took the plea.

THE COURT: Well, you have to make a decision right now. Do you want to proceed on your petition to withdraw your plea, I will appoint a lawyer to represent you, and we could go forward on that? I make no representations on whether or not I'll allow you to do that, allow you to withdraw your plea. You may not have a–this computation issue with the Department of Corrections may not be a valid reason to allow you to withdraw your plea.

Or I'll give you these extra 24 days of aggregate credit it's called an issue a corrected mitt and–

DEFENDANT: I mean, it was a good plea. I mean, I just thought I would get that, so I mean.

THE COURT: Do you need time to think about what you want to do?

DEFENDANT: No. I don't want to stay in Stateville. I'm good. So the order was no good for the 309 days?

THE COURT: Well, it is, but some of those 309 days overlapped with the 600 days that you got in the other case.

DEFENDANT: Oh, okay.

THE COURT: If they had both been in the same courtroom, it would have been

-4-

calculated how many days your were in custody straight time and then it's called an aggregate credit on each one. You don't get–it doesn't get counted twice though. That's the actual number of days you spent in custody.

DEFENDANT: I'll just withdraw them both. I'll just withdraw them both, the days. I'll just withdraw them both.

THE COURT: I told you, I'll give you the credit for the extra days, but it's not going to be 309 days.

DEFENDANT: I know.

THE COURT: Having done that, do you wish to then withdraw your petition to withdraw your plea of guilty?

DEFENDANT: Yes, I want to withdraw that motion. Not withdraw my plea. Withdraw the–

THE COURT: The petition?

DEFENDANT: Yeah. I'll withdraw that.

THE COURT: You're sure?

DEFENDANT: Yes, I'm positive.

THE COURT: As I indicated, if you want to proceed on that, I will appoint a lawyer to represent you.

DEFENDANT: Nah, it was a good plea.

THE COURT: The defendant withdraws his petition to withdraw his plea. The defendant's motion for a corrected mitt is granted. The defendant is given 657 days of aggregate credit. That's as of the original date of sentencing August 15th. That's nunc pro tunc of August 15, 2011.

So the original sentence will stand, which was seven years in the Illinois Department of Corrections on Count 1 consecutive to 08-C6-60762, three years of mandatory supervised release, but it's 657 days of aggregate credit."

Defendant filed a timely notice of appeal.

¶ 10                                      ANALYSIS

¶ 11      Defendant argues that he is entitled to the benefit of his fully negotiated plea, which provided that he would receive 309 days' credit to be applied against his 7-year sentence. The State argues that defendant is estopped from now arguing that he is entitled to 309 days' credit because he was given the opportunity to withdraw his guilty plea in the trial court, and made a reasoned decision to persist in this plea of guilty, despite the fact that one term of his plea could not be complied with.

¶ 12      At the outset, we note there is no dispute that the State and defendant agreed that, as a term of the plea agreement in this case, defendant would receive 309 days' credit for time served against the 7-year sentence imposed in this case and that this sentence would run consecutive to the 7-year sentence he received in No. 08-C6-60762. The parties are also in agreement that defendant was credited with the same 309 days in No. 08-C6-60762, which

results in defendant receiving double credit for time served, which is impermissible. See *People v. Latona*, 184 Ill. 2d 260, 271 (1998) ("to the extent that an offender sentenced to consecutive sentences had been incarcerated prior thereto on more than one offense simultaneously, he should be given credit only once for actual days served"). The sentencing judge, Judge Stephenson, clearly was not advised that defendant had already been credited with the 309 days in the earlier case. We are confident that had Judge Stephenson been accurately informed, defendant would have been advised he could not receive double credit for his time served in custody prior to his plea. In any event, the parties disagree, however, on how to correct this error.

¶ 13    The real question here is whether defendant can persist in his plea of guilty as he has clearly done and still demand to receive the benefit of the bargain. "Our supreme court has declared that plea agreements, and especially negotiated plea agreements for fully negotiated pleas where the parties have agreed on the appropriate sentence, are generally governed by contract law." *People v. Donelson*, 2011 IL App (1st) 092594, ¶ 14 (citing *People v. Absher*, 242 Ill. 2d 77, 90 (2011)). Plea agreements are contracts between the State and the defendant, and the circuit court is not a party to the agreement. *People v. Smith*, 406 Ill. App. 3d 879, 888-89 (2010). The supreme court explained in *People v. Whitfield*, 217 Ill. 2d 177, 183-84 (2005), that "[w]hen seeking relief from a guilty plea, either directly or collaterally, there are two separate, though closely related, constitutional challenges that may be made: (1) that the plea of guilty was not made voluntarily and with full knowledge of the consequences, and (2) that defendant did not receive the benefit of the bargain he made with the State when he pled guilty." Due process mandates that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (Emphasis omitted.) (Internal quotation marks omitted.) *Id.* at 185. Accordingly, we find the 309-day credit was consideration for the plea of guilty such that defendant is entitled to the benefit of the bargain in this case; defendant is entitled to the 309 days' credit he was promised. See *People v. Clark*, 2011 IL App (2d) 091116.

¶ 14    The State insists that defendant is not entitled to any relief because he persisted in his plea of guilty and is now estopped from arguing that the State keep its part of the agreement. Indeed, Judge Coghlan thoroughly advised defendant of the fact he was getting credit for the 309 days but the credit was being applied to a different sentence imposed on a different case and defendant indicated that he understood Judge Coghlan's accurate description of his situation and clearly stated he did not seek to vacate his plea of guilty. However, we do not find that because defendant indicated that he understood the issue as explained by the court subsequent to his sentencing that he thereby waived or is estopped from insisting on the State keeping its part of the agreement. See *Whitfield*, 217 Ill. 2d 177; *People v. Snyder*, 2011 IL 111382, ¶ 30.

¶ 15    Furthermore, the State argues that defendant received the benefit of the bargain he made with the State when he pled guilty because his actions at the hearing on his motions to withdraw his guilty plea and to correct the mittimus amounted to him agreeing to the plea agreement, without the 309 days' credit. We reject this argument.

¶ 16    Although Judge Coghlan gave defendant a choice to either withdraw his motion to vacate

his guilty plea or to grant his motion to withdraw his plea and appoint counsel, he also indicated that there were no assurances as to what would follow. This Hobson's choice put a *pro se* defendant at risk of losing what the State previously agreed to provide, along with the potential that a different sentence might be imposed following a subsequent trial or plea of guilty.

¶ 17    Defendant argues that Supreme Court Rule 615(b)(4) allows this court to enforce the bargain and reduce defendant's sentence by 309 days. Illinois Supreme Court Rule 615(b)(4) gives reviewing courts the power to reduce a sentence; however, that power should be used carefully and sparingly. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). In response, the State argues the appropriate remedy is to remand to the trial court, because this court does not have the authority to resentence defendant, recognizing, or more appropriately admitting, that on remand the court would have the ability to closely approximate the intended sentence because the authorized sentence range is between 6 and 30 years. Thus, the State indirectly suggests its agreement with defendant's argument that reducing the base 7-year sentence by the 309 days' credit, the agreed but unavailable sentence would be closely approximated.

¶ 18    Defendant advances the holdings in *People v. Clark*, 2011 IL App (2d) 091116, and *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552 (2002), in support of his position that this court can reduce his sentence by 309 days, the amount of presentence credit he was promised. In *Clark*, the defendant appealed from the denial of his motion to withdraw his guilty plea. This court reversed the trial court finding that the record showed that the State had "represented in open court that it had been agreed that defendant was entitled not only to 339 days' credit toward his sentence for residential burglary, but also to 311 days' credit toward his sentence for attempted armed robbery." *Clark*, 2011 IL App (2d) 091116, ¶ 5. This court reasoned that because the sentences were consecutive, "the most natural interpretation of the prosecutor's description of the agreement is that defendant would serve a prison term of 8 years, less 339 days, for residential burglary, followed by a prison term of 8 years, less 311 days, for attempted armed robbery." *Id*. In addition, we found that the trial court ratified the agreement as stated by the prosecutor, never clarifying that defendant would, in fact, receive a total credit of only 339 days–not 650–toward his aggregate sentence. *Id*. ¶ 6. We noted that had defendant actually received the 311 days credit toward his sentence, he would have also earned an additional 311 days of good-conduct credit. As such, we reduced Clark's sentence for attempted armed robbery by 622 days to 6 years and 108 days. *Id*. ¶ 11-12.

¶ 19    In *People ex rel. Ryan v. Roe*, 201 Ill. 2d 552 (2002), the defendant pled guilty to a sex offense and was sentenced, based on a negotiated plea agreement, to a term of eight years in prison. The parties and the sentencing judge contemplated that the defendant would serve his sentence at 50% rather than at 85% as required under the truth-in-sentencing statute. See 730 ILCS 5/3-6-3(a)(2)(ii) (West 2000). The trial judge even noted in the defendant's sentencing order that the sentence was not subject to the statute. The State later sought to enforce the reduced credit under the truth-in-sentencing statute, which would require the defendant to serve his sentence at 85%. *Roe*, 201 Ill. 2d at 556.

¶ 20    Our supreme court agreed with the State that the statute required defendant to serve his sentence at 85% and that the agreed-upon sentence violated Illinois law. As a result, the court ordered the trial court to issue an amended sentencing order to remove the "not subject to"

language. In reaching its decision, however, the supreme court recognized that neither party contemplated the application of the truth-in-sentencing statute when negotiating toward a guilty plea. Consequently, the court exercised its authority under Illinois Supreme Court Rule 615(b)(4), and the court reduced the defendant's sentence to a six-year sentence, resulting in actual service closer to the four years to which he had agreed. *Roe*, 201 Ill. 2d at 556-58.

¶ 21    Contrary to the States's argument, Supreme Court Rule 615(b)(4) provides authorization for us to exercise our authority to modify defendant's sentence, and enforce the benefit of the bargain by reducing defendant's sentence by 309 days. Accordingly, we reduce defendant's 7-year sentence by 309 days to 6 years and 56 days imprisonment. We make no correction to the previously corrected mittimus granting defendant 657 days of aggregate credit.

¶ 22    Next, defendant argues that his MSR term should be reduced to two years because the proper term of MSR for a defendant subject to mandatory Class X sentencing is the term applicable to the underlying felony, in this case two years (a Class 2 felony), and not the three-year term for Class X felonies.

¶ 23    Section 5-5-3(c)(8) of the Unified Code of Corrections (Unified Code) provides that a defendant, over the age of 21, who is convicted of a Class 1 or Class 2 felony shall be sentenced as a Class X offender if he has prior convictions for two Class 2 or higher class felonies arising out of a different series of acts. 730 ILCS 5/5-4.5-95(b) (West 2010). The MSR term attached to a Class X sentence is three years. 730 ILCS 5/5-8-1(d)(1) (West 2010).

¶ 24    Defendant acknowledges that four districts of the appellate court have rejected the same argument he raises here. See *People v. Lampley*, 405 Ill. App. 3d 1 (1st Dist. 2010); *People v. Lee*, 397 Ill. App. 3d 1067, 1068-73 (4th Dist. 2010); *People v. McKinney*, 399 Ill. App. 3d 77, 79-83 (2d Dist. 2010); *People v. Watkins*, 387 Ill. App. 3d 764, 766-67 (3d Dist. 2009). However, defendant argues that those decisions should not be followed as they were wrongly decided. Defendant argues that our supreme court's decision in *People v. Pullen*, 192 Ill. 2d 36 (2000), dictates a different result. We disagree.

¶ 25    In *Pullen*, the court considered the issue of the maximum aggregate length of consecutive sentences a court could impose under section 5-8-4(c)(2) of the Unified Code (730 ILCS 5/5-8-4(c)(2) (West 1994)). The *Pullen* issue differs from the issue presented here. We therefore find no reason to depart from our earlier decisions in *Lampley*, *Lee*, *McKinney* and *Watkins* and find that the three-year term of MSR imposed on defendant as a Class X offender was proper.

¶ 26                                    CONCLUSION

¶ 27    For the foregoing reasons, we modify the sentencing order and reduce defendant's sentence by 309 days to 6 years, 56 days' imprisonment. The judgment of the circuit court previously granting defendant 657 days of aggregate credit remains undisturbed. The judgment of the circuit court is otherwise affirmed.

¶ 28    Affirmed as modified.