# Illinois Official Reports

## Appellate Court

---

**People v. Grant, 2015 IL App (4th) 140971**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NATHAN B. GRANT, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-14-0971 |
| Filed | May 26, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Vermilion County, No. 12-CF-79; the Hon. Craig H. DeArmond, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Ryan R. Wilson, all of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Randall Brinegar, State's Attorney, of Danville (Patrick Delfino, David J. Robinson, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel                   PRESIDING JUSTICE POPE delivered the judgment of the court, with opinion.

Justices Turner and Appleton concurred in the judgment and opinion.

**OPINION**

¶ 1       On December 16, 2013, pursuant to a negotiated plea agreement, defendant, Nathan B. Grant, pleaded guilty to possession of a controlled substance (cocaine) (720 ILCS 570/402(c) (West 2010)), with an agreed-upon sentence of 2 years' imprisonment, with credit for 384 days served. On October 14, 2014, defendant filed a *pro se* postconviction petition alleging he did not receive the benefit of the bargain because he received a different, more onerous sentence than the one to which he agreed. On October 20, 2014, the trial court summarily dismissed the petition as frivolous and patently without merit.

¶ 2       On appeal, defendant argues the trial court erred in dismissing his postconviction petition because his claim he did not receive the benefit of the bargain with the State presented the gist of a constitutional claim. We affirm.

¶ 3                             I. BACKGROUND

¶ 4       The record shows on September 23, 2011, defendant was arrested and on September 26, 2011, was charged with two counts of aggravated battery in a public place (720 ILCS 5/12-3.05(c) (West 2010)) and one count of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2010)) in Douglas County case No. 11-CF-70. On February 15, 2012, while out on bond, defendant was arrested for the instant offense and charged with possession of a controlled substance (cocaine) (720 ILCS 570/402(c) (West 2010)) and possession of cannabis (720 ILCS 550/4(c) (West 2010)) in Vermilion County case No. 12-CF-79.

¶ 5       Relevant to this appeal, on January 22, 2013, the Douglas County circuit court (in case No. 11-CF-70) sentenced defendant to 3 years and 3 months' imprisonment for aggravated battery in a public place (720 ILCS 5/12-3.05(c) (West 2010)), with credit for 268 days served (September 23, 2011, to October 13, 2011; March 1, 2012, to May 10, 2012; and July 30, 2012, to January 21, 2012). Defendant completed his prison sentence on December 14, 2013, but he remained in prison during mandatory supervised release (MSR) because the Department of Corrections (DOC) could not find housing.

¶ 6       On December 16, 2013, defendant appeared before the Vermilion County circuit court on writ from the Illinois River Correctional Center, where he was serving MSR imposed by Douglas County (in case No. 11-CF-70). The State informed the court the parties reached a fully negotiated plea agreement. Defense counsel advised the court of the terms of the agreement, stating defendant would plead guilty to count I, possession of a controlled substance, in exchange for a sentence of two years' imprisonment, with credit for time served. Additionally, the State noted count II, possession of cannabis, would be dismissed.

¶ 7       The trial court advised defendant of the nature of the charges and the range of possible penalties. The court reviewed the terms of the plea agreement with defendant and admonished him of his right to plead not guilty and persist in that plea. The court further advised defendant

by pleading guilty, he would give up his right to trial and relinquish his rights to be confronted with the witnesses against him and to cross-examine those witnesses. In response to the court's queries, defendant said he understood the nature of the charges against him and the range of possible penalties. Defendant confirmed he understood the terms of the plea agreement and the rights he would be waiving by pleading guilty. Defendant stated his choice to plead guilty was made of his own free will and no person forced, threatened, or coerced him to plead guilty. Defendant further affirmed no one promised him anything other than what had been discussed.

¶ 8    The trial court again asked defendant whether he understood the terms of the agreement and defendant answered, "Yes." Thereafter, the State informed the court defendant's sentence would run consecutively to his sentence in Douglas County case No. 11-CF-70 and the following exchange occurred:

"THE COURT: [Defendant], you understand consecutive sentence? Sentence doesn't begin until the completion of the sentence.

THE DEFENDANT: Yes.

MS. LACY [assistant public defender]: Your Honor, he has completed other sentencing, currently on parole, but because of his prior sex abuse case he's required to register and therefore he has to do sex offender registry. He doesn't have a placement, Judge, so he's sitting in [DOC] currently on parole.

THE COURT: So you understand that this is a consecutive sentence to the one that you've completed?

THE DEFENDANT: I do but I don't. I don't understand how it can be consecutive to a charge that's already done?

THE COURT: I'm just telling you what Mr. Brozovich is telling me.

THE DEFENDANT: Well–

THE COURT: Either you're in agreement with that or you're not. If you're not in agreement with that then we don't have a plea. If you're in agreement with that then we do. Whatever you want to do is entirely up to you.

THE DEFENDANT: I don't understand why it's just not a regular plea, Judge.

MR. BROZOVICH [Assistant State's Attorney]: You need to talk to your attorney then. I can't answer your question.

MS. LACY: Your Honor, I've explained to [defendant] Grant that technically speaking while he was out on bond for the Douglas County case–I think he was out on bond for this case when he picked up the Douglas County case. The Douglas County case has been served. His sentence has been completed. Essentially he was paroled Friday. He was brought here. He's now currently on parole, and I do believe that he would get credit from the 2012 time that he spent in custody and they surrendered on bond from 2/21 of 2013 until yesterday's date. I've explained all of that to him, Your Honor, so I don't know what it is that [defendant] would like to do. He indicated to me he wanted to accept the plea based upon my explanations to him. I don't have control over [DOC] *** and I don't know, quite frankly, to be honest with the Court and I told [defendant] this, I don't know how [DOC] is going to figure out that time.

THE DEFENDANT: I understand, Your Honor. I just–what I'm trying to say is the wording. When you sentence me you say it's consecutive to my time. *The DOC will*

*look at it as consecutive jail time credit, consecutive one charge, you only get one credit serving*, you understand what I'm saying.

THE COURT: I understand.

THE DEFENDANT: Only reason I'm stating this is for you to just sentence me, not say it's consecutive to the time I've already done.

THE COURT: *Sounds like we don't have a plea.*" (Emphases added.)

¶ 9 The trial court asked if the case should be set for trial and defense counsel replied, "[t]hat's fine, Judge." When the court scheduled the matter for trial, defendant interjected:

"THE DEFENDANT: I mean, I wanted to take the plea, though, Your Honor, I wanted to take the plea, I just–

THE COURT: No, I can't do anything other than what the plea agreement–

THE DEFENDANT: All right. *I'm gonna take the plea.* I already said yes I would, I want to take the plea. I just trying to get an understanding if this gonna be–

THE COURT: *The problem is that you don't have an agreement as to whether it's consecutive or not. State is saying plea contingent upon it being a consecutive sentence. So without that condition in there[,] there is no plea.*

MS. LACY: Would Your Honor be willing to pass the case briefly so I could speak to [defendant] since they're here.

THE COURT: Sure." (Emphases added.)

¶ 10 Following an 11-minute recess, the parties appeared on the record and the following colloquy occurred:

"THE COURT: Where are we, Ms. Lacy?

MS. LACY: I'm sorry, Your Honor. Thank you for giving us that opportunity to speak. I've spoken with [defendant]. We have gone over everything including consecutive credits, all that type of stuff and he's indicated to me he'd like to accept the proposed plea agreement that we proposed to Your Honor earlier this morning.

THE COURT: Is that true, [defendant]?

THE DEFENDANT: Yes.

THE COURT: *And you understand that that includes the provision that the sentence is consecutive to the sentence that you've completed in the Douglas County case*?

THE DEFENDANT: Yes." (Emphasis added.)

¶ 11 The trial court obtained defendant's waiver of his trial rights and the State presented a factual basis for the plea. The court accepted defendant's plea of guilty as knowing and voluntary and entered a finding of guilty. Defendant waived his right to a presentence investigation report and the court immediately moved to sentencing. The State presented evidence of defendant's criminal history as evidence in aggravation and defendant offered nothing in mitigation. At the close of the plea hearing, the following exchange occurred between the court and defendant:

"THE COURT: [Defendant], you've got the right to make a statement in your own behalf before I impose sentence. Is there anything that you wish to say?

THE DEFENDANT: Just that I want my jail time credit and possibly reimbursed on that–my bond from the Circuit Clerk.

- 4 -

THE COURT: Bond issue I can't address ***.

Of the credit you'll be entitled to–what was the total?

MS. LACY: 384.

THE COURT: 384 days for the dates specified."

The court sentenced defendant to 2 years' imprisonment, to run consecutively to the sentence imposed in Douglas County case No. 11-CF-70, 1 year MSR, and credit for 384 days previously served (February 15, 2012, to May 11, 2012; and February 21, 2013, to December 15, 2013). Defendant did not file a direct appeal.

¶ 12　　On October 14, 2014, defendant filed a *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2012)). He argued his negotiated guilty plea was based upon credit for 384 days in presentence custody, which he did not receive. (We note, DOC awarded defendant 16 days' credit for time actually served.) Defendant attached the following to his postconviction petition: (1) the written sentencing judgments in case Nos. 11-CF-70 and 12-CF-79; (2) three sentence-calculation worksheets prepared by DOC; (3) counseling summaries from the Illinois River Correctional Center records office; (4) a letter from DOC's chief records officer; (5) defendant's grievance and response to his grievance; and (6) portions of the plea hearing transcript. On October 20, 2014, the trial court dismissed defendant's postconviction petition as frivolous and patently without merit.

¶ 13　　This appeal followed.

¶ 14　　　　　　　　　　　　　　II. ANALYSIS

¶ 15　　Defendant argues the trial court erred in summarily dismissing his postconviction petition because he presented the gist of a constitutional claim regarding his guilty plea. He does not contest the validity of his guilty plea but asserts he did not receive the benefit of his plea bargain with the State. Specifically, defendant asserts he has been deprived of 368 days' credit to be applied against his 2-year sentence. As relief, defendant asks this court to reduce his prison sentence by 736 days, twice the amount of presentence credit, based on his eligibility for day-for-day sentencing credit.

¶ 16　　　　　　　　　　　　　　A. The Act

¶ 17　　The Act provides a three-stage procedure through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 (West 2012). Here, defendant's petition was dismissed at the first stage of the postconviction proceeding. At the first stage, the trial court independently reviews the petition, taking the allegations as true, and determines if it is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10, 912 N.E.2d 1204, 1208-09 (2009). A court may summarily dismiss a *pro se* postconviction petition "as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *Id.* at 11-12, 912 N.E.2d at 1209. A petition has no arguable basis in law or fact if it is based on an indisputably meritless legal theory or a fanciful factual allegation. *Id*. at 16, 912 N.E.2d at 1212. To avoid dismissal at this stage, the petitioner need only present the gist of a constitutional claim. *People v. Edwards*, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). At this point in the proceedings, all well-pleaded allegations in the petition are taken as true and liberally construed in favor of the

petitioner. *People v. Brooks*, 233 Ill. 2d 146, 153, 908 N.E.2d 32, 36 (2009). We review the summary dismissal of a postconviction petition *de novo*. *People v. Tate*, 2012 IL 112214, ¶ 10, 980 N.E.2d 1100.

¶ 18                                B. Due Process and Benefit of the Bargain

¶ 19     As stated, defendant contends his constitutional right to due process and fundamental fairness was violated because he pleaded guilty in exchange for a specific sentence, but he received a different, more onerous sentence than the one to which he agreed. The State challenges defendant's efforts to reduce his sentence. The State argues defendant was aware he would not receive double credit for time served and he persisted in his plea; thus, he was not denied the benefit of his bargain. We agree with the State.

¶ 20     Initially, we note the parties do not dispute, pursuant to the plea agreement in this case, defendant would receive a 2-year prison sentence, with credit for 384 days served, and his sentence would run consecutively to the sentence he received in Douglas County (No. 11-CF-70). The parties also agree defendant received 268 days' credit in Douglas County (No. 11-CF-70), which results in him receiving double credit for time served, which is not permissible. See *People v. Latona*, 184 Ill. 2d 260, 271, 703 N.E.2d 901, 907 (1998) ("to the extent that an offender sentenced to consecutive sentences had been incarcerated prior thereto on more than one offense simultaneously, he should be given credit only once for actual days served"). Nevertheless, the parties dispute whether defendant received the benefit of his plea bargain.

¶ 21     A defendant may challenge the constitutionality of his guilty plea by claiming "(1) that the plea of guilty was not made voluntarily and with full knowledge of the consequences, and (2) that defendant did not receive the benefit of the bargain he made with the State when he pled guilty." *People v. Whitfield*, 217 Ill. 2d 177, 183-84, 840 N.E.2d 658, 663 (2005). " '[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " (Emphasis omitted.) *Id*. at 185, 840 N.E.2d at 664 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). A defendant's constitutional right to due process and fundamental fairness is violated if he pleads guilty in exchange for a specific sentence but receives a different, more onerous sentence than the one to which he agreed. *Id*. at 189, 840 N.E.2d at 666.

¶ 22     Our supreme court has repeatedly held fully negotiated guilty pleas are governed by principles of contract law. *People v. Absher*, 242 Ill. 2d 77, 87, 950 N.E.2d 659, 666 (2011). Accordingly, where a defendant enters a negotiated plea of guilty in exchange for specified benefits, "*both the State and the defendant* must be bound by the terms of the agreement." (Emphasis in original.) *Whitfield*, 217 Ill. 2d at 190, 840 N.E.2d at 666. Thus, to allow a defendant to unilaterally modify the terms of a fully negotiated plea agreement while holding the State to its part of the bargain " 'flies in the face of contract law principles.' " *Absher*, 242 Ill. 2d at 87, 950 N.E.2d at 666 (quoting *People v. Evans*, 174 Ill. 2d 320, 327, 673 N.E.2d 244, 248 (1996)). Similarly, "when a specified amount of sentence credit is included within the terms of a defendant's plea agreement with the State, the defendant is entitled to the amount of sentence credit promised." *People v. McDermott*, 2014 IL App (4th) 120655, ¶ 27, 12 N.E.3d 148. "This is true even if applying the credit *** would violate the rule set forth in [*Latona*]." *Id*.

¶ 23        In the case at bar, defendant pleaded guilty pursuant to a negotiated plea agreement. The terms of the plea agreement, as set forth by defense counsel at the plea hearing, included a specific sentence of two years' imprisonment, to be served consecutively to No. 11-CF-70, with credit for time served. The trial court ratified this agreement and reviewed the terms with defendant several times to ensure he understood. Our review of the record shows defendant was fully aware of these terms as well as the consequences of consecutive sentencing. When defense counsel admitted she did not know how DOC would apply the sentence credit, defendant said, "I understand, Your Honor." He then explained in open court consecutive sentencing would mean he would *not* receive double credit–*i.e.*, DOC would not apply all 384 days against his 2-year prison sentence. Aware of these consequences, defendant asked the court to unilaterally modify the terms of his agreement by imposing a concurrent sentence. The trial judge refused, explaining, "I can't do anything other than what the plea agreement [provides]" and the "State is saying [the] plea [is] contingent upon it being a consecutive sentence. So without that condition *** there is no plea." Defendant ultimately acquiesced to consecutive sentencing and persisted in his guilty plea. He now asks this court to do what the State and trial court refused–unilaterally reduce his sentence by aggregating his 384 days' credit with the 268 days' credit awarded in Douglas County (No. 11-CF-70). In effect, defendant seeks to hold the State to its part of the bargain while unilaterally modifying the sentence to which he had agreed. Such a practice flies in the face of contract law principles. *Evans*, 174 Ill. 2d at 327, 673 N.E.2d at 248 (" 'Neither side should be able, any more than would be private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind.' " (quoting *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir. 1986))). We find it fundamentally unfair for defendant to accept a negotiated plea agreement, obtain the benefit of that bargain (especially the dismissed charge and light sentence), and then separately seek a reduction of his agreed-upon sentence. Defendant's efforts to unilaterally reduce his sentence while holding the State to its part of the bargain cannot be condoned because it would "encourage gamesmanship of a most offensive nature." (Internal quotation marks omitted.) *Id*. As a result, we find no reason to modify the terms of defendant's negotiated plea agreement.

¶ 24        Defendant cites *McDermott*, 2014 IL App (4th) 120655, 12 N.E.3d 148, *People v. Clark*, 2011 IL App (2d) 091116, 956 N.E.2d 1078, and *People v. Lenoir*, 2013 IL App (1st) 113615, 987 N.E.2d 1015, in support of his argument he was denied the benefit of his bargain. We find these cases distinguishable.

¶ 25        In *McDermott*, the defendant pleaded guilty in Champaign County to aggravated battery, with an agreed-upon sentence of 5 years' imprisonment and credit for 222 days served. Thereafter, the defendant pleaded guilty in McLean County to unlawful altering of a title document, with an agreed-upon sentence of 5 years' imprisonment and credit for 233 days served. Both sentences were to be served consecutively to sentences imposed in Henry County and Du Page County. *McDermott*, 2014 IL App (4th) 120655, ¶¶ 2-3, 7, 987 N.E.2d 1015. During the plea hearings in both cases, the defendant attempted to stress or clarify that his sentence credit was "part of the sentence" or "part of the plea." (Internal quotation marks omitted.) *Id*. ¶ 12, 987 N.E.2d 1015. Both circuit courts confirmed the defendant would receive the specified amount of credit. *Id.* Thereafter, the defendant filed a postconviction petition, arguing he was denied the benefit of his bargain because DOC refused to apply the presentence credit to his sentences. *Id.* ¶ 13, 987 N.E.2d 1015. On appeal, this court reversed the trial

court's summary dismissal of the defendant's petitions. We reasoned "the record clearly shows the terms of the parties' agreements included specified amounts of sentence credit and the records in each case fail to reflect [the] defendant was informed otherwise." *Id.* ¶ 30, 12 N.E.3d 148. However, we acknowledged:

> "[H]ad [the] defendant been informed during his plea hearings that his sentence credit would not be calculated as he anticipated and he persisted in his pleas, the result of these appeals could have been different. Under such circumstances, the record would likely show the specified amounts of sentence credit were not essential, bargained-for terms of [the] defendant's plea agreements." *Id.*

We therefore held, under the facts presented, the defendant did not receive the benefit of his bargains with the State because the record failed to show he was informed he would not receive double credit. *Id.*

¶ 26    Likewise, in *Clark* and *Lenoir*, the defendants were never advised their sentence credit would not be applied as they anticipated. See *Clark*, 2011 IL App (2d) 091116, ¶¶ 5-6, 956 N.E.2d 1078 (neither the State nor the trial court clarified the defendant would, in fact, receive a total credit of only 339 days–not 650–toward his aggregate sentence); *Lenoir*, 2013 IL App (1st) 113615, ¶ 12, 987 N.E.2d 1015 (the trial court never informed the defendant he could not receive double credit for time served in custody prior to his plea). Since the records in *Clark* and *Lenoir* contained no evidence showing the specified amounts of credit were not essential, bargained-for terms of the plea agreement, the court held the defendants were entitled to the specified amounts of credit promised by the State. *Clark*, 2011 IL App (2d) 091116, ¶¶ 7-12, 956 N.E.2d 1078; *Lenoir*, 2013 IL App (1st) 113615, ¶ 13, 987 N.E.2d 1015.

¶ 27    Unlike the defendants in *McDermott*, *Clark*, and *Lenoir*, defendant in this case was clearly aware of the consequences of his plea. He explained in open court he would not receive the full 384 days of credit because DOC treats consecutive sentences as one sentence. Since defendant persisted in his plea of guilty, the record contains evidence which clearly shows he knew he would not receive double sentencing credit by accepting the State's offer. Defendant's decision to agree to consecutive sentencing amounted to him agreeing to credit for actual time served, not double credit. Thus, the sentence credit was not an essential, bargained-for term of his plea agreement and he is not entitled to an additional 368 days' credit.

¶ 28    We similarly find *Whitfield* distinguishable from the case at bar. Contrary to defendant's assertion, *Whitfield*, which granted the defendant a reduction in his sentence because he received a different, more onerous sentence than the one to which he agreed, has no application here because the record in this case affirmatively shows defendant was aware of the consequences of his plea agreement. See *Whitfield*, 217 Ill. 2d at 200, 840 N.E.2d at 672 (where the record contains *no* evidence which affirmatively shows defendant knew he would be subject to an MSR term, defendant's alleged unawareness must be taken as true).

¶ 29    Finally, the colloquy between the trial court and defendant at the close of the plea hearing does not change our analysis. Although the trial court indicated defendant would receive 384 days' credit, defendant was already aware his sentence would run consecutively to his sentence in Douglas County. While the court's admonishment could have been improved by explicitly stating defendant would not receive "double credit," an imperfect admonishment does not violate due process where real justice has not been denied or defendant has not shown prejudice. *Id.* at 195, 840 N.E.2d at 669. Here, defendant's due-process rights have not been denied, nor has he demonstrated any prejudice. He knew the effect a consecutive sentence

would have on his presentence credit and he persisted in his plea. Any alleged mistaken impression defendant may have had about the 384 days' credit was not justified when judged by objective standards. *People v. Davis*, 145 Ill. 2d 240, 244, 582 N.E.2d 714, 716 (1991) ("the burden is on the defendant to establish that the circumstances existing at the time of the plea, judged by objective standards, justified the mistaken impression").

¶ 30　　We conclude defendant received the benefit of his bargain and is not entitled to a reduced sentence. Accordingly, we hold the trial court properly dismissed defendant's postconviction petition where the allegations in his petition failed to demonstrate the gist of a constitutional claim. Because we are affirming the dismissal of defendant's postconviction petition as frivolous and patently without merit, we need not address defendant's remaining argument.

¶ 31　　　　　　　　　　　　III. CONCLUSION

¶ 32　　For the foregoing reasons, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2012).

¶ 33　　Affirmed.