NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170290-U

NO. 4-17-0290

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 23, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| WILLIAM JONES JR., | ) | No. 08CF1456 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Steigmann and Justice Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court properly dismissed defendant's amended postconviction petition.

¶ 2     In April of 2017, the trial court entered an order dismissing defendant's amended petition for postconviction relief. On appeal, defendant argues the court erred in dismissing his claim that he was denied the benefit of his bargain from the plea agreement he entered into with the State. In the alternative, defendant argues he did not receive effective assistance of plea counsel or reasonable assistance from postconviction counsel. We affirm.

¶ 3                              I. BACKGROUND

¶ 4     On October 7, 2008, the State charged defendant, William Jones Jr., by information in Macon County case No. 08-CF-1456 (hereinafter, case No. 08-CF-1456) with unlawful possession of a controlled substance with intent to deliver with a prior unlawful

possession of a controlled substance conviction (720 ILCS 570/401(a)(2)(B) (West 2006)) (count I), unlawful possession of a controlled substance with a prior unlawful possession of a controlled substance conviction (720 ILCS 570/402(a)(2)(B) (West 2006)) (count II), and unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2006)) (count III), stemming from a search of defendant's home on October 2, 2008.

¶ 5　　　　Defendant was arrested on October 2, 2008. On October 10, 2008, defendant was released on bond.

¶ 6　　　　On October 13, 2009, defendant was arrested in Macon County case No. 09-CF-1652 (hereinafter, case No. 09-CF-1652), a matter unrelated to case No. 08-CF-1456. On June 3, 2010, following a jury trial, defendant was convicted in case No. 09-CF-1652, and on August 12, 2010, he was sentenced to 12 years in the Illinois Department of Corrections (IDOC).

¶ 7　　　　On September 1, 2015, defendant pleaded guilty in case No. 08-CF-1456 to count I. During the hearing on defendant's guilty plea, the following colloquy occurred:

"THE COURT: William Jones 08-CF-1456. People versus William Jones. Cause recalled. People present by Ms. Wagoner. The defendant is present in custody. Mr. Tighe is present. I believe this was set for Jury Trial this morning.

MR. TIGHE [(ASSISTANT PUBLIC DEFENDER)]: It was, Your Honor. We have an agreed disposition now.

THE COURT: And what are the terms, please?

MR. TIGHE: Defendant will plead guilty to Count I. Counts II and III will be dismissed. There's an agreed sentence of 15 years in [I]DOC. *** [T]his is a 75 percent sentence by statute. And it would have been served consecutively to the term he's serving right now on another case. He is still in [I]DOC custody

until, I believe, next month.

MS. WAGONER [(ASSISTANT STATE'S ATTORNEY)]: Judge, and that other case is Macon County Case Number 09-CF-1652.

THE COURT: Does the defendant have any credit for time served dates in this case?

MR. TIGHE: He did post a bond to get out on this charge. That's been so long ago though, unfortunately, I don't have that information ready today.

MS. WAGONER: Judge, there was [a] Presentence Report that was prepared back in December of 2010, which lays out some dates that *** he was in custody.

* * *

THE COURT: Okay. According to the Presentence Report, custody dates are 10-3-08 through 10-10-08 and 10-13-09 through 9-12-10. And then it says 12-10-10. Apparently, until—well, it would be yesterday, 8-31-15. Is that correct?

MS. WAGONER: Well, Judge, I don't think—I think that once he gets to the Department of Corrections because there's some overlap and he was actually serving a Department of Corrections sentence, he won't get credit for those additional days because he was *** according to the Presentence Report the sentence for the '09 case was—let's see, August 12th of 2010, according to the Presentence Report.

* * *

MS. WAGONER: There was a Jury Trial in that case. And then was sentenced on August 12th of 2010, if I recall correctly.

- 3 -

THE COURT: That's correct. The sentence was 8-12-10, which would mean then among the credit dates it would be 10-13-09 to 8-12-10. Right?

MS. WAGONER: Yes. That's my understanding. 'Cause he wouldn't get double credit for the time that he was sentenced to the Department of Corrections on the other case.

MR. TIGHE: We agree with that.

THE COURT: Well, just to clarify, for the record, it looks like the credit dates are 10-03-08 through 10-10-08 and 10-13-09 through 8-12-10. Unless, he was in custody in both cases simultaneously. I don't know. Does counsel know? What we're gonna do is we'll take the plea, but I'd like—I'd like you please to review the records so, we get the credit dates. 'Cause this is the kind that comes back all the time.

* * *

THE COURT: All right. Mr. Jones, do you think you understand what the proposed plea agreement is that's stated here?

DEFENDANT: Yes, Your Honor.

THE COURT: Is that your understanding of the proposed plea agreement?

DEFENDANT: Yes, Your Honor."

¶ 8 Later during the plea hearing, the lawyers and the trial court again discussed the sentence credit issue and the following colloquy ensued:

"MR. TIGHE: Your Honor, I would just make the suggestion that we perhaps stay the mittimus for a week so, we can figure out your request on making sure we have the credit for days served right. That was just—

THE COURT: Well, he can go back now. I mean, you can come in and just—

MS. WAGONER: Yeah. I don't think he needs to be present for us to determine the credit time served.

THE COURT: No. He doesn't have to be.

MS. WAGONER: We just figure that off the record.

THE COURT: I'll put the credit dates as I stated. And then, if you look at it and you find out it's wrong just let me know and I'll sent [*sic*] an amended mittimus to the Department of Corrections.

MR. TIGHE: Understood. All right. Thank you."

¶ 9 Consistent with the plea agreement, the trial court sentenced defendant to 15 years in prison to be served at 75%, to run consecutively to the sentence imposed in case No. 09-CF-1652, and 3 years of mandatory supervised release (MSR). The court's written judgment also stated: "The Court further finds that the defendant is entitled to receive credit for time actually served in custody from 10/3/08-10/10/08 and from 10/13/09-8/12/10."

¶ 10 On October 29, 2015, defendant *pro se* filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). In defendant's postconviction petition, he alleged that he "plead [*sic*] guilty to the charge of unlawful possession [of a] controlled substance with the intent to deliver, and was sentenced to 15 years in [IDOC], with 3 years MSR and [c]redit for 306 days time spent in [c]ustody." Defendant further alleged that he "received a calculation work sheet from the IDOC regarding his projected release and [m]andatory out-date for [case No. 08-CF-1456]" and that the calculation worksheet "[did] not reflect the credit for 306 days [ ]sentence credit that [defendant]

had served. [Defendant] was informed that he was not receiving the agreed upon 306 days credit." Defendant stated that "his due process rights have been [v]iolated because he is not receiving the benefit of his fully negotiated plea." Defendant requested the trial court "[m]odify the sentencing [o]rder and reduce the [s]entence to reflect the [o]rder of the [s]entencing [c]ourt and [c]redit [him] with 306 days." Defendant attached to his petition the sentencing judgment, the information stating the charge to which he pleaded guilty, and the IDOC sentence calculation worksheet. The IDOC sentence calculation worksheet stated defendant's "adjusted proj[ected] out date" is January 13, 2027.

¶ 11      On February 2, 2016, the trial court found that defendant's postconviction petition had been pending in excess of 90 days and appointed the public defender to represent defendant in the postconviction proceeding.

¶ 12      On December 19, 2016, postconviction counsel filed an amended petition for postconviction relief. In the amended petition, defendant argued that he received ineffective assistance of counsel from his plea attorney and that he had been denied the benefit of his bargain under the plea agreement he entered into with the State. The amended postconviction petition stated, in relevant part:

> "Pursuant to plea agreement, [defendant] was given credit for time previously served in custody from October 3, 2008 to October 10, 2008, and from October 13, 2009 to August 12, 2010.
>
> However, the [IDOC] did not credit [defendant] for the period of time from October 13, 2009 through August 12, 2010.
>
> Prior to the plea, [defendant's] counsel, Mr. Timothy Tighe, failed to advise [defendant] of the amount of credit he would receive towards his sentence.

- 6 -

Indeed, at the time of the plea, Mr. Timothy Tighe was unsure how much credit [defendant] would receive.

If [defendant] had been aware that he would not receive credit for the time served in custody from October 13, 2009 through August 12, 2010, he would not have entered a plea of guilty.

[Defendant] maintains his actual innocence of these charges.

It is clear that the conduct of [defendant's] attorney, Mr. Timothy Tighe, was ineffective for failing to ensure [defendant's] plea was entered voluntarily and intelligently, and moreover, [defendant] was deprived of the benefit of his bargain."

¶ 13    Postconviction counsel attached a certificate to the amended petition in compliance with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013). In it, postconviction counsel certified that she "made any amendments to the petition necessary for adequate presentation of [defendant's] contentions."

¶ 14    On March 2, 2017, the State filed a motion to dismiss defendant's amended petition for postconviction relief, arguing defendant was not entitled to double credit for time spent in pretrial custody and that he was properly admonished as to that fact. The State further argued plea counsel's performance was not ineffective and that defendant failed to properly allege he had been prejudiced because his claim of actual innocence was deficient. The State attached to its motion a copy of the sentencing order in case No. 09-CF-1652. That order stated, "The Court finds that the defendant is entitled to receive credit for time actually served in custody from 10/13/09 to 8/11/10."

¶ 15    On April 12, 2017, a hearing was held on the State's motion to dismiss

defendant's amended petition for postconviction relief. During the defendant's argument, postconviction counsel addressed the sufficiency of defendant's assertion of innocence contained in his affidavit. Citing *People v. Brown*, 2016 IL App (4th) 140760, 67 N.E.3d 526, postconviction counsel stated:

"[That case states] that in order to support a[n] ineffective assistance of counsel claim, along with the guilty plea, there must also be a claim of actual innocence. *** We don't have to prove that there was actual innocence today. There must be a claim—pursuant to anything under the post-conviction act, it must be supported by affidavit and is supported by defendant's affidavit that his innocence of the charges."

Later in her argument, postconviction counsel addressed the remedies available to defendant if his benefit of the bargain claim were successful. Referring to *People v. Whitfield*, 217 Ill. 2d 177, 840 N.E.2d 658 (2005), she stated:

"[*Whitfield*] was a case where basically the State made a representation as to what the parole term would be, which was made as—as part of the bargain, despite the fact that it was incorrectly stated and not in line with the statute. So the *Whitfield* case cites to a couple other cases, and basically says that a present inability to fulfill a promise does not mean a breach of a plea agreement has not occurred.

***

So [here] the defendant knows and understands that he can't have double credit. By statute, the cases are mandatory consecutive. He can't have double credit for any period of time. But that was a promise made that was made to him that was not kept. So where specific performance is not possible, he can't get

- 8 -

double credit, because it would be unlawful. Then a withdrawal of his guilty plea is the only way to remedy the harm that was done to him as a violation of his Constitutional rights.

* * *

*** [T]he only way to remedy at this point is to allow him to withdraw his guilty plea and put him in the same position he was before his Constitutional violation occurred."

¶ 16    The trial court dismissed defendant's amended postconviction petition, finding defendant had received the benefit of his bargain and that plea counsel was not ineffective.

¶ 17    This appeal followed.

¶ 18                                II. ANALYSIS

¶ 19    On appeal, defendant argues the trial court "erred in dismissing [his postconviction] claim that he was denied the benefit of his plea agreement because, contrary to the terms of his plea agreement, he was not awarded any pretrial credit in *** case, 2008-CF-1456." In the alternative, defendant argues: (1) his postconviction counsel provided unreasonable assistance and (2) the court "erred in dismissing [his postconviction] claim that his guilty plea was entered involuntarily and unknowingly when his plea counsel provided ineffective assistance by failing to advise him that he would not receive any pretrial credit towards his sentence in *** case, 2008-CF-1456."

¶ 20    The Act "provides a three-stage process for the adjudication of postconviction petitions." *People v. Harris*, 224 Ill. 2d 115, 125, 862 N.E.2d 960, 967 (2007). When a postconviction petition is not dismissed at the first stage, it advances to the second stage where counsel may be appointed and the State may file a responsive pleading. *Id.* at 126. "The second

stage of postconviction review tests the legal sufficiency of the petition." *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767. At the second stage of postconviction proceedings, "all factual allegations that are not positively rebutted by the record are accepted as true." *People v. Hall*, 217 Ill. 2d 324, 334, 841 N.E.2d 913, 920 (2005). "If at the second stage a substantial showing of a constitutional violation is established, the petition proceeds to the third stage for an evidentiary hearing." *Harris*, 224 Ill. 2d at 126.

¶ 21        Our supreme court has recognized two constitutional challenges that may be asserted when a defendant seeks relief, either directly or collaterally, from a guilty plea: "(1) that the plea of guilty was not made voluntarily and with full knowledge of the consequences, and (2) that defendant did not receive the benefit of the bargain he made with the State when he pled guilty." *Whitfield*, 217 Ill. 2d at 183-84.

¶ 22                    A. Defendant Was Not Denied the Benefit of His Bargain

¶ 23        Defendant first contends the trial court "erred in dismissing [his postconviction] claim that he was denied the benefit of his plea agreement because contrary to the terms of his plea agreement, he was not awarded any pretrial credit in *** case, 2008-CF-1456." The second-stage dismissal of a postconviction petition is subject to *de novo* review. *People v. Pendleton*, 223 Ill. 2d 458, 473, 861 N.E.2d 999, 1008 (2006).

¶ 24        Illinois law requires that a trial court credit a defendant against his sentence for his presentence incarceration. 730 ILCS 5/5-4.5-100(b) (West 2014). Illinois law further provides, "consecutive sentences are to be treated as a single term of imprisonment." *People v. Latona*, 184 Ill. 2d 260, 271, 703 N.E.2d 901, 907 (1998). For this reason, "to the extent that an offender sentenced to consecutive sentences had been incarcerated prior thereto on more than one offense simultaneously, he should be given credit only once for actual days served." *Id.*

Notwithstanding the prohibition against double sentence credit in cases involving consecutive sentences, as set forth in *Latona*, when a specified amount of sentence credit is included within the terms of a defendant's plea agreement with the State, the defendant is entitled to the amount of sentence credit promised. See, *e.g.*, *People v. McDermott*, 2014 IL App (4th) 120655, 12 N.E.3d 148; *People v. Clark*, 2011 IL App (2d) 091116, 956 N.E.2d 1078; *People v. Lenoir*, 2013 IL App (1st) 113615, 987 N.E.2d 1015.

¶ 25        "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *People v. Hughes*, 2012 IL 112817, ¶ 68, 983 N.E.2d 439 (quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). "The principal inquiry, in that respect, is whether the defendant has received the benefit of his bargain." *People v. Donelson*, 2013 IL 113603, ¶ 19, 989 N.E.2d 1101.

¶ 26        Illinois courts employ principles of contract law when construing the terms and existence of a plea agreement. *People v. Henderson*, 211 Ill. 2d 90, 103, 809 N.E.2d 1224, 1232 (2004). "In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena v. Anheuser-Busch, Inc.*, 219 Ill. 2d 135, 151, 847 N.E.2d 99, 109 (2006). Additionally, "[i]n order for there to be a contract between parties there must be a meeting of the minds or mutual assent as to the terms of the contract[.]" *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 313, 515 N.E.2d 61, 65 (1987).

¶ 27        Defendant's benefit-of-the-bargain argument fails in the instant case because the record does not reflect that sentence credit generally, let alone a specified number of days of sentence credit, was made part of the plea agreement. The terms of the plea agreement, as recited by defense counsel during the plea colloquy, included only the dismissal of two pending counts

and imposition of a 15-year sentence which would run consecutively to his sentence in case No. 09-CF-1652. Sentence credit was not included in defense counsel's recitation of the plea terms. Additionally, while the transcript of the plea hearing reflects the lawyers and the trial court subsequently discussed that defendant was entitled to sentence credit, there was uncertainty as to the actual sentence credit to be awarded. In fact, at the conclusion of the plea hearing, plea counsel requested that the court "stay the mittimus for a week so, we can figure out [the court's] request on making sure we have the credit for days served right." The court responded: "I'll put the credit dates as I stated. And then, if you look at it and you find out it's wrong just let me know and I'll sent [*sic*] an amended mittimus to the Department of Corrections." Plea counsel subsequently stated, "Understood. All right. Thank you." The above colloquy underscores there was no meeting of the minds or agreement between defendant and the State as to a certain sentence credit. At best, the record reflects the parties agreed that defendant would receive whatever number of days of sentence credit he was legally entitled to.

¶ 28       Defendant argues that *McDermott*, *Clark*, and *Lenoir* require us to conclude he did not receive the benefit of his bargain. We find these three cases are distinguishable. In *McDermott*, the defendant pleaded guilty to a charge in Champaign County and, nine days later, pleaded guilty to a different charge in McLean County. *McDermott*, 2014 IL App (4th) 120655, ¶¶ 2-3. When defendant pleaded guilty to the Champaign County and McLean County charges, he was already serving sentences imposed by Henry County, Du Page County, and Sangamon County. *Id.* ¶¶ 10, 16. During the Champaign County plea hearing, the State advised the trial court that, according to the parties' agreement, the defendant would receive a five-year prison sentence which would run consecutive to his sentences in his Henry and Du Page County cases and concurrent with the sentences imposed in his Sangamon and McLean County cases. *Id.* ¶ 10

The State further informed the court that, pursuant to the plea agreement, the defendant " 'would be entitled to 222 days['] credit for time served.' " *Id.* The court then sentenced the defendant to a five-year sentence and advised the defendant he would receive credit for 222 days previously served. *Id.* ¶ 11.

¶ 29 The *McDermott* defendant's written plea agreement in the McLean County case stated that the defendant agreed to a five-year prison sentence to be served consecutively to the Henry and Du Page County cases. *Id.* ¶ 16. The plea agreement also provided that the defendant would receive " 'credit for 233 days served.' " *Id.* The trial court sentenced the defendant in accordance with the parties' plea agreement. *Id.* ¶ 17.

¶ 30 On appeal, the defendant in *McDermott* argued he did not receive the benefit of his bargain with the State in either his Champaign or his McLean County case. *Id.* ¶ 25. He argued IDOC included the sentence credit reflected in those plea agreements in the 284 days' credit he had already received in the Du Page County case. *Id.* ¶ 13, 19. This court noted that in the Champaign County case, "the State set forth the terms of the parties' plea agreement in open court and identified defendant's receipt of 222 days' sentence credit as one of those terms." *Id.* ¶ 29. Similarly, we noted that, in the McLean County case, "the written plea agreement stated defendant would receive 'credit for 233 days served.' " *Id.* We then found, "defendant was entitled to the agreed-upon amounts of credit and failed to receive the benefit of his bargains with the State when the credit was not applied to his sentences." *Id.* ¶ 30.

¶ 31 In *Clark*, the defendant was arrested for residential burglary and subsequently released on bond. *Clark*, 2011 IL App (2d) 091116, ¶ 2. While out on bond, the defendant was arrested for armed robbery in an unrelated matter. *Id.* The defendant then remained in custody for 331 days. *Id.* The parties reached a plea agreement on both charges which the prosecutor

described to the court as follows:

> "The defendant would be sentenced to 8 years in the Department of
> Corrections on each charge. The sentences are consecutive. ***
>
> On the attempt armed robbery the defendant has 311 days' credit for time
> served. On the residential burglary charge the defendant has 339 days' credit for
> time served.
>
> And that's the full agreement." *Id.* ¶ 5.

The appellate court in *Clark* noted that "the most natural interpretation of the prosecutor's description of the agreement is that defendant would serve a prison term of 8 years, less 339 days, for residential burglary, followed by a prison term of 8 years, less 311 days, for attempted armed robbery." *Id.* The court also noted defendant was never told he would not receive a total of 650 days' credit. *Id.* ¶ 6. The court then reduced defendant's sentence in accordance with the "defendant's agreement with the State, as evidenced by the record." *Id.* ¶ 11.

¶ 32        Finally, in *Lenoir*, the defendant was arrested and then released on bond when he was arrested for a separate offense which culminated in the subject appeal. *Lenoir*, 2013 IL App (1st) 113615, ¶ 3. Pursuant to a plea deal on the unrelated charge, defendant was sentenced to seven years' imprisonment with credit for 633 days spent in presentence custody. *Id.* Pursuant to a plea deal relating to the charge from which the appeal was taken, defendant was sentenced to seven years' imprisonment, to run consecutive to the sentence in the unrelated charge, with 309 days of sentence credit. *Id.* ¶ 4-5. The appellate court "note[d] there [was] no dispute that the State and defendant agreed that, as a term of the plea agreement *** defendant would receive 309 days' credit for time served against the 7-year sentence imposed in this case and that this sentence would run consecutive" to his other sentence. *Id.* ¶ 12. The court reduced the

defendant's sentence to include the agreed-upon sentence credit. *Id.* ¶ 27.

¶ 33　　　　This case is unlike *McDermott*, *Clark*, and *Lenoir*. In those cases, the parties expressly agreed to a certain amount of sentence credit to be granted to the defendants. The same cannot be said here. During the plea hearing on September 1, 2015, the issue of sentence credit arose *following* defense counsel's recitation of the terms of the plea agreement when the trial court asked whether defendant had "any credit for time served[,]" to which defense counsel responded he "d[idn't] have that information ready today." Unlike in *McDermott*, *Clark*, and *Lenoir*, the State and defendant in this case did not agree to a certain amount of sentence credit in their plea agreement. Therefore, defendant's postconviction claim that he was denied the benefit of his bargain was properly dismissed.

¶ 34　　　　B. Defendant Received Reasonable Assistance from Postconviction Counsel

¶ 35　　　　Defendant argues in the alternative that postconviction counsel provided unreasonable assistance where she "failed to make the necessary amendments" to his *pro se* petition. Defendant alleges postconviction counsel provided deficient assistance in that she: (i) failed to amend his *pro se* petition to include a request for specific performance of his plea agreement and (ii) "never amended [his] claim to argue that he was denied the benefit of the bargain of the plea agreement due to the fact that he never received credit from October 3, 2008 through October 10, 2008."

¶ 36　　　　The Act provides that, at the second stage in a postconviction proceeding, the trial court "shall appoint counsel if satisfied that the petitioner has no means to procure counsel." 725 ILCS 5/122-4 (West 2014). "The right to counsel in postconviction proceedings is wholly statutory." *People v. Perkins*, 229 Ill. 2d 34, 42, 890 N.E.2d 398, 402 (2007). The Act "do[es] not guarantee that [a petitioner] will receive the same level of assistance that the Constitution

- 15 -

guarantees to defendants at trial." *People v. Owens*, 139 Ill. 2d 351, 364, 564 N.E.2d 1184, 1189 (1990). Rather, petitioners are entitled only to the level of assistance required by the Act, that is, "a reasonable level of assistance." *People v. Suarez*, 224 Ill. 2d 37, 42, 862 N.E. 2d 977, 979 (2007).

¶ 37    In order to ensure reasonable assistance of counsel is provided to postconviction petitioners, Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) imposes specific duties on postconviction counsel. *Id.* Rule 651(c) requires postconviction counsel to "consult[ ] with petitioner *** to ascertain his or her contentions of deprivation of constitutional rights, *** examine[ ] the record of the proceedings at the trial, and *** [make] any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. Feb. 6, 2013). "The filing of a facially valid Rule 651(c) certificate creates a rebuttable presumption that counsel acted reasonably and complied with the rule." *People v. Wallace*, 2016 IL App (1st) 142758, ¶ 25, 67 N.E.3d 976. Here, defendant only alleges postconviction counsel's performance was deficient under the third requirement of Rule 651(c), *i.e.*, that her performance was deficient in that she failed to make the proper amendments to his petition to include a request for specific performance of the sentence credit terms of his plea agreement, as well as a claim he was denied the benefit of his bargain to sentence credit from October 3, 2008, through October 10, 2008.

¶ 38    We review *de novo* whether postconviction counsel provided reasonable assistance in compliance with Rule 651(c). *Suarez*, 224 Ill. 2d at 41-42.

¶ 39    As noted, defendant first alleges postconviction counsel failed to provide reasonable assistance in that she failed to amend his *pro se* petition to include a request for specific performance of the alleged sentence credit terms of his plea agreement as opposed to

just requesting the opportunity to withdraw his guilty plea. Defendant's claim is without merit. As discussed above, the record in this case affirmatively refutes defendant's assertion that he and the State agreed to a certain amount of sentence credit as part of the plea agreement. Because we find that the parties did not agree to a specific sentence credit, defendant's argument that postconviction counsel should have added a request for specific performance relating to that nonexistent term of the plea agreement must fail.

¶ 40        Defendant also argues postconviction counsel failed to provide reasonable assistance by failing to amend his claim to "argue that he was denied the benefit of the bargain of the plea agreement due to the fact that he never received credit from October 3, 2008 through October 10, 2008." As with defendant's previous argument, he cannot claim postconviction counsel was deficient in failing to amend his petition to include a claim relating to a nonexistent term of his plea agreement. Moreover, regarding this particular period of presentence incarceration—October 3, 2008, to October 10, 2008,—it appears IDOC *has* acknowledged defendant is entitled to a sentence credit. On March 12, 2019, we took judicial notice of defendant's IDOC Internet Inmate Status and defendant's Offender Custody History and Verification of Incarceration. In these documents, defendant's "Projected Parole Date" and his "Projected Date of Release from Custody" is stated as January 5, 2027. This is eight days earlier than the date reflected in an earlier worksheet that was included in defendant's postconviction petition. Thus, it appears IDOC has acknowledged defendant is entitled to sentence credit for the period between October 3, 2008, and October 10, 2008.

¶ 41                    C. Plea Counsel Was Not Ineffective

¶ 42        Defendant next contends the trial court erred in dismissing his claim that plea counsel provided ineffective assistance by failing to advise him "about the correct application of

pretrial credit" in his case.

¶ 43          In order to present a postconviction claim of ineffective assistance of counsel, defendant was required to establish both prongs of the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Brown*, 2017 IL 121681, ¶ 25, 102 N.E.3d 205. Under *Strickland*, defendant was required to establish that "counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's deficient performance." *Id.*

¶ 44          Defendant claims that plea counsel's failure to advise him regarding the amount of sentence credit to which he was entitled constituted ineffective assistance and "rendered his subsequent plea involuntary." The State responds arguing plea counsel cannot be found to have rendered ineffective assistance for failing to advise defendant about any applicable sentence credit because such is a collateral consequence, not a direct consequence, of his guilty plea. We agree with the State.

¶ 45          "[A] defendant's guilty plea must be knowing and intelligent." *People v. Williams*, 188 Ill. 2d 365, 371, 721 N.E.2d 539, 543 (1999). "A criminal defendant has the constitutional right to be reasonably informed with respect to the direct consequences of accepting or rejecting a plea offer." (Emphasis omitted.) *People v. Curry*, 178 Ill. 2d 509, 528, 687 N.E.2d 877, 887 (1997). "[T]he failure to inform a defendant of a consequence of a guilty plea is material only if the consequence is a direct consequence of the guilty plea. [Citations.] Collateral consequences, on the other hand, provide no basis for reversal." *People v. Frison*, 365 Ill. App. 3d 932, 934, 851 N.E.2d 890, 892-93. "[A] direct consequence is one that is definite, immediate, and largely automatic in its effect on a defendant's punishment, while a collateral consequence does not relate to the length of the sentence that is imposed." (Internal quotation

marks omitted.) *People v. Thomas*, 2017 IL App (4th) 150815, ¶ 17, 93 N.E.3d 664. "[T]he focus, in such an analysis, is on the sentence imposed, not the time to be actually served." *Id.* Moreover, "[a] collateral consequence generally results from action taken by an agency that the trial court does not control." *Williams*, 188 Ill. 2d at 372. "Whether a consequence is direct or collateral presents a question of law and is subject to *de novo* review." *Frison*, 365 Ill. App. 3d at 934.

¶ 46 Here, defendant claims plea counsel was required to advise him "about the correct application of pretrial credit." However, the application of such credit is under the jurisdiction of IDOC, not the trial court. 730 ILCS 5/5-4.5-100(b) (West 2014) ("[IDOC] shall calculate the credit at the rate specified in [s]ection 3-6-3 [citation]."). Further, the amount of sentence credit defendant may be entitled to does not relate to the sentence *imposed* by the trial court. It only relates to the sentence defendant ultimately *serves*. See *People v. La Pointe*, 2015 IL App (2d) 130451, ¶¶ 84-85, 40 N.E.3d 72 (Appellate court followed the "traditional direct/collateral rule" in denying the defendant's ineffective assistance claim relating to defense counsel's alleged failure to advise him about good conduct credit.); see also *Frison*, 365 Ill. App. 3d at 934 ("[T]hough the truth-in-sentencing law may well affect the sentence defendant ultimately serves, it does not affect the sentence imposed by the trial court."). Thus, we find the trial court here did not err in dismissing defendant's postconviction claim that plea counsel was ineffective for failing to advise him "about the correct application of pretrial credit."

¶ 47 Finally, defendant argues, in the alternative, that postconviction counsel failed to provide reasonable assistance by failing to amend defendant's *pro se* petition to include "factual allegations demonstrating that it would have been rational for him to reject the plea agreement with proper advice, that he would have been acquitted at trial, or that he was actually innocent."

Defendant's first claim relates to his argument that plea counsel was ineffective for failing to advise him about sentence credit. Because we have already rejected this argument, we need not address defendant's claim that postconviction counsel failed to adequately plead defendant's resultant prejudice.

¶ 48 Defendant's remaining reasonable assistance claims relate to his amended postconviction petition in which he alleged that he "maintain[ed] his actual innocence of these charges." In reviewing the transcript from the hearing on defendant's amended postconviction petition, it is readily apparent that postconviction counsel included the "actual innocence" allegation only because she thought it was required in order to plead an ineffective-assistance-of-counsel claim. In other words, she included it only because she thought it was necessary to support a claim of ineffectiveness. In light of our rejection of defendant's argument that plea counsel was ineffective, we find his reasonable-assistance argument is without merit.

¶ 49                                    III. CONCLUSION

¶ 50 For the reasons stated, we affirm the circuit court's dismissal of defendant's amended postconviction petition.

¶ 51 Affirmed.