# Illinois Official Reports

## Appellate Court

*People v. Walker*, 2015 IL App (1st) 130530

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WALKER, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0530 |
| Filed | June 17, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 85-C-6845 (02); the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Alan D. Goldberg and Deborah Nall, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary P. Needham, and Christine Cook, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justice Lavin concurred in the judgment and opinion.<br>Presiding Justice Pucinski dissented, with opinion. |

**OPINION**

¶ 1    Almost 30 years ago, James Walker was convicted of first-degree murder in the shooting deaths of three people. Walker claimed he was in Momence, Illinois, at the time of the shooting, but three eyewitnesses identified him as the shooter. On direct appeal, the appellate court affirmed Walker's conviction. *People v. Walker*, No. 1-86-0856 (1988) (unpublished order under Supreme Court Rule 23). Walker filed two postconviction petitions, which were summarily dismissed by the circuit court and affirmed by the appellate court. *People v. Walker*, No. 1-02-0959 (2003) (unpublished order under Supreme Court Rule 23); *People v. Walker*, No. 1-03-0333 (2004) (unpublished order under Supreme Court Rule 23). On December 4, 2012, Walker filed a third *pro se* petition for postconviction relief asserting actual innocence and reasonable doubt. The circuit court of Cook County denied the petition as without merit. We affirm, finding Walker's petition for postconviction relief presents neither newly discovered, noncumulative exculpatory evidence nor material evidence of a conclusive character that would likely change the outcome on retrial.

¶ 2                              BACKGROUND

¶ 3    On April 30, 1985, Glendon McKinley, Vickie Nolden, and Ricco Chalmers were fatally shot while standing on the corner of 54th Street and Halsted Avenue in Chicago. At trial, the State presented the testimony of three eyewitnesses who said they saw Walker get out of the passenger seat of a white car and open fire on the victims. One eyewitness, Andre Chalmers, the brother of one of the victims, identified Walker as the shooter and testified that he had known Walker for years. Another eyewitness, Tyrone Wheatley, testified that he saw Walker for the first time when he stepped out of the front passenger seat and shoot, describing him as a man with braided hair, a light mustache, and a goatee. The final eyewitness, Charles Poree, testified that he was inside a nearby tavern when he saw a white Pontiac pull up and the person in the front passenger seat shoot Ricco Chalmers. He identified Walker as the shooter, describing him as having braids, a light mustache, a little beard, and small hat. He also testified that Andre Chalmers never mentioned that he knew the man who shot his brother. On cross-examination, Poree was asked whether he heard Andre Chalmers say "Strickland did it." Although Andre Chalmers denied he ever made the statement, Poree stated that he thought he heard Andre say it.

¶ 4    Walker presented an alibi defense through the testimony of family members and friends. That testimony placed Walker at his mother's home in Momence for his wedding rehearsal. Nonetheless, Walker was found guilty and sentenced to natural life in prison without parole. This court affirmed that judgment (*People v. Walker*, No. 1-86-0856 (1988) (unpublished order under Supreme Court Rule 23)) and later affirmed the circuit court's dismissal of two *pro se* petitions for relief (*People v. Walker*, No. 1-02-0959 (2003) (unpublished order under Supreme Court Rule 23); *People v. Walker*, No. 1-03-0333 (2004) (unpublished order under Supreme Court Rule 23)).

¶ 5    On December 4, 2012, Walker filed the petition before us. He asserts actual innocence and reasonable doubt, and attaches three supporting statements: (i) a sworn affidavit from Walker reiterating that at the time of the homicides he was attending his wedding rehearsal with his family; (ii) a sworn affidavit from Eugene Horton, a fellow inmate and a prison law clerk, who worked on Walker's case and claims to have interviewed several eyewitnesses, including

Andre Chalmers and Charles Poree; and (iii) a statement from Tyrone Powell, a fellow inmate who claims he witnessed the shooting. Horton states that Chalmers and Poree told him that the shooter was a man named Strickland. Horton also claims that Poree and an inmate named Vincent Carter, another alleged eyewitness, told him that Strickland threatened to kill them if they identified him as the shooter and for this reason, Horton asserts, they would not speak about the murders until Horton told them that Strickland died.

¶ 6     The crux of Walker's actual innocence claim rests on the unnotarized statement of Tyrone Powell. Powell asserts that as he stood in a McDonald's parking lot eating, he saw a white car make a sudden stop in front of a tavern on the corner of 54th and Halsted. He then saw a "tall black man" get out of the passenger seat, shoot a handgun, get back in the car, and speed away. He further states that he knew Walker in 1985 and knew that the shooter was someone other than Walker. Powell said he did not know that Walker had been convicted for the crime until Eugene Horton recently asked him about it.

¶ 7     After reviewing Walker's petition and supporting documents, the circuit court rejected the petition as devoid of merit. Addressing Tyrone Powell's statement, the court observed:

> "[N]ow this many years later he says that he found a witness, somebody apparently in the penitentiary that the law clerk also in the penitentiary found and has an affidavit saying that he was there, that [Walker] wasn't the shooter. It doesn't say who the shooter was. It doesn't say when he first knew anything about this and when he shared this information about who may or may not be involved. His name is Tyrone [Powell]. He has an affidavit apparently that he filed out in the penitentiary and it's coming quite late. There was an alibi witness that was presented. There were witnesses that were presented. I don't know that this late testimony by Tyrone [Powell] without any circumstances *** other that he was present and saw a gunman come out and it wasn't [Walker] would be enough to change the outcome of the trial."

¶ 8     Walker timely appeals.


¶ 9                                     ANALYSIS

¶ 10    Walker seeks postconviction relief based on actual innocence and reasonable doubt, claiming that he presented a colorable claim of actual innocence based on exculpatory affidavits. The State responds that (i) the assertion being made was litigated at trial, (ii) could have been discovered earlier, and (iii) does not exonerate Walker.

¶ 11    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)) provides a three-step process by which a convicted defendant may assert a substantial denial of his or her constitutional rights in the proceedings that led to the conviction. *People v. Harris*, 224 Ill. 2d 115, 124 (2007). Such violations include "freestanding claims of actual innocence based on newly discovered evidence." *People v. Brown*, 2013 IL App (1st) 091009, ¶ 50. A proceeding under the Act collaterally attacks the judgment. *People v. Evans*, 186 Ill. 2d 83, 89 (1999). "Consequently, any issues that were decided on direct appeal are *res judicata*, and any issues that could have been presented on direct appeal, but were not, are forfeited." *People v. Reyes*, 369 Ill. App. 3d 1, 12 (2006). We review the summary dismissal of a postconviction petition *de novo. People v. Coleman*, 183 Ill. 2d 366, 389 (1998) .

¶ 12    At the first stage of a postconviction proceeding, we focus on whether the petition sets forth a "gist" of a constitutional claim. *People v. Boclair*, 202 Ill. 2d 89, 99-100 (2002). If the

court determines that the defendant satisfied the minimum pleading threshold, then the petition moves on to second-stage proceedings. 725 ILCS 5/122-2.1(b) (West 2012). At the second stage, an indigent defendant has a right to counsel, and the State may file an answer or a motion to dismiss the defendant's petition for postconviction relief. *Id*.; *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). During this stage, the trial court reviews the petition and accompanying documentation to determine whether the defendant made a "substantial showing" that a constitutional violation occurred. *Id.* at 246. If the defendant fails to make the requisite showing, the petition will be dismissed. *Id.* But should the defendant satisfy the substantial showing requirement, the petition advances to the third stage of postconviction review, where the trial court conducts an evidentiary hearing on the petition and makes fact-finding and credibility determinations. 725 ILCS 5/122-6 (West 2012); *People v. Childress*, 191 Ill. 2d 168, 174 (2000).

¶ 13    The defendant bears the burden to establish a substantial deprivation of constitutional rights. *People v. Waldrop*, 353 Ill. App. 3d 244, 249 (2004). Walker's petition–a first-stage proceeding–will be dismissed only if found frivolous or patently without merit. See *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). The supporting evidence for a petition, like Walker's, based on actual innocence, must be "new, material, noncumulative and, most importantly, ' "of such conclusive character" ' as would ' "probably change the result on retrial." ' " *People v. Coleman*, 2013 IL 113307, ¶ 84 (quoting *People v. Washington*, 171 Ill. 2d 475, 489 (1996), quoting *People v. Silagy*, 116 Ill. 2d 357, 368 (1987)).

¶ 14    Walker claims, as he did at trial and in his postconviction petition, that at the time of the murders he and his family were at a wedding rehearsal in Momence. He argues that the "substantial new evidence" makes apparent that someone else committed the crime. In Walker's view, this evidence would likely "change the result on retrial, particularly given that the jury's consideration of the possibility that someone named Strickland committed the offense." He insists that his petition should have advanced to the second stage because he met his burden of alleging the gist of a constitutional claim.

¶ 15    The State argues that the issue of a shooter named Strickland, having been litigated at trial, is barred by the doctrine of *res judicata*, which prohibits relitigation of issues already resolved by trial. "[T]he phrase 'frivolous or patently without merit' encompasses the common-law doctrine[ ] of *res judicata* *** such that claims that were, or could have been, raised and adjudicated are barred and are subject to summary dismissal at the first stage." *People v. Kane*, 2013 IL App (2d) 110594, ¶ 26. During trial, the possibility that the shooter was Strickland rather than Walker came up multiple times, including during the cross-examination of the State's witnesses and closing arguments. Additionally, Charles Poree testified that he thought he heard Andre Chalmers say "Strickland did it." The jury, nevertheless, found Walker guilty.

¶ 16    Relying on *People v. Ortiz*, 235 Ill. 2d 319 (2009), Walker maintains *res judicata* and collateral estoppel do not apply where a defendant presents newly discovered, additional evidence in support of a claim, because the "claims" are different. *Id*. at 332. The defendant in *Ortiz*, who was convicted for first-degree murder, filed a third postconviction petition asserting actual innocence based on newly discovered eyewitness testimony. *Id.* at 322. The defense presented a highly fact-oriented account of its inability to access the witness. The witness knew the defendant; they belonged to the same gang, but had a hostile relationship. *Id.* at 326. On the night of the murder, the witness stood in front of the field house where the homicide took place and saw the victim get shot by two identifiable members of his gang. *Id.* The witness did not

see the defendant in the park that day nor go to the police in fear of gang retaliation. *Id.* at 327. Not long after the shooting, the witness moved to Wisconsin. The appellate court reversed the trial court's denial of the petition and remanded for a new trial. *People v. Ortiz*, 385 Ill. App. 3d 1 (2008).

¶ 17    The supreme court affirmed, noting "newly discovered" evidence refers to evidence that has been discovered since the trial and that the defendant could not have discovered sooner through due diligence. *Ortiz*, 235 Ill. 2d at 334. The witness did not come forward until 10 years later, after seeing the defendant's mother and telling her that he knew her son was not guilty. *Id.* at 327.The court concluded that the new witness could not have been discovered sooner because he "essentially made himself unavailable as a witness when he moved to Wisconsin shortly after the murder." *Id.* at 334. The court also held that in addition to the witness being newly discovered, his affidavit was material and not merely cumulative of other trial evidence. *Id.*

¶ 18    According to Walker, like the witness in *Ortiz*, Powell's statement constitutes newly discovered evidence because Powell was "unavailable" due to his fear of Strickland. But, contrary to Walker's assertion, nowhere in Powell's statement did he say he did not come forward earlier due to fear of repercussions. Further, unlike the affidavit in *Ortiz*, Powell's statement fails to provide the court a reasonable explanation for either his 27-year absence or his sudden appearance. The record suggests that Powell, Walker, and Horton are incarcerated in the same correctional facility, but Powell's whereabouts during the time between the murder and his affidavit are unknown. Unlike the witness in *Ortiz*, Powell did not say that he left the state for an extended period of time, making it difficult for the defense to locate him. The dissent argues Walker should not be expected to find Powell or other witnesses to support his actual innocence claim while he was incarcerated. But the burden to show due diligence falls on the defendant (*People v. Barnslater*, 373 Ill. App. 3d 512, 523 (2007)), and here, Walker fails to explain why Powell was not located until nearly 30 years after the crime occurred. Because the issue of another shooter, named Strickland, was litigated at trial and because Walker failed to present any newly discovered evidence, the doctrine of *res judicata* bars this issue.

¶ 19    We are not persuaded by Walker's post-oral argument citation to *People v. Ross*, 2015 IL App (1st) 120089, as additional authority for his *res judicata* claim. In *Ross*, after a bench trial, the defendant was convicted of being an armed habitual criminal and sentenced to 80 months in prison. *Id.* ¶ 1. The defendant filed a posttrial motion arguing that his son was unavailable at trial because he was hospitalized and in a coma but had since provided an affidavit admitting he committed the crime. *Id.* ¶ 17. The trial court denied the motion and defendant's conviction was affirmed on direct appeal. *Id.* ¶ 18. In his *pro se* postconviction petition, defendant again attached his son's affidavit admitting to the crime. *Id.* ¶ 21. The circuit court summarily dismissed the petition. *Id.* ¶ 22. In reversing the summary dismissal, the appellate court rejected the State's *res judicata* argument, finding that neither the newly discovered evidence claim nor the admissibility of the son's unnotarized statement was raised on direct appeal and nothing in the record indicated "the trial court made a definitive judicial decision based on the substance of the statement." *Id.* ¶ 28.

¶ 20    Walker contends *Ross* supports his argument that questions surrounding Strickland's involvement in the shooting are not *res judicata*, even though they were mentioned at trial. We

disagree. Unlike in *Ross*, the jury heard and rejected the question of Strickland's involvement and Walker's alibi. Thus, *res judicata* applies.

¶ 21    Even if we consider Powell's statement to be newly discovered evidence, it would be cumulative. "Evidence is considered cumulative when it adds nothing to what was already before the [fact finder]." *Ortiz*, 235 Ill. 2d at 335. Walker presented alibi witnesses at trial who testified to Walker's whereabouts at the time of the shooting. Even if, as the dissent contends, Powell's statement may tend to support Walker's assertion that someone else did the shooting, an allegation of actual innocence based on newly discovered evidence is not intended to question the strength of the State's case. *People v. Washington*, 171 Ill. 2d 475, 495 (1996). Aside from attempting to undermine the State's case, the evidence presented in Walker's petition only presents information available at trial, particularly Walker's alibi defense. Further, the statement lacks important details that would support its veracity. For instance, although Powell said he saw a "tall black man" get out of the passenger seat, shoot a handgun, get back in the car and speed away, he failed to mention that three people were shot. In the absence of this fact, Powell's affidavit lacks a connection to the crime with which Walker was charged.

¶ 22    After oral arguments, Walker cited *People v. Allen*, 2015 IL 113135, as additional authority. In *Allen*, the defendant was convicted of murder and armed robbery for a shooting in 1984. *Id.* ¶ 1. In 2009, the defendant filed a *pro se* postconviction petition alleging actual innocence and attached an unnotarized statement from Robert Langford, who claimed to be responsible for the shooting and said that Allen was not involved. *Id.* ¶ 14. The circuit court dismissed the petition as frivolous and patently without merit, noting that the statement was unnotarized and listing other reasons for dismissal. *Id.* ¶ 15. The supreme court reversed, finding that lack of notarization "does not prevent the court from reviewing the petition's 'substantive virtue,' as to whether it 'set[s] forth a constitutional claim for relief.' [Citation.]" *Id.* ¶ 34. The court concluded that "[w]hile not an admissible affidavit in its present form, the Langford statement properly qualifies as 'other evidence.' 725 ILCS 5/122-6 (West 2008)." *Id.* Further, the court stated, "the circuit court may not dismiss at the first stage solely for failure to notarize a statement styled as an evidentiary affidavit. Instead, the circuit court at the first stage must look to whether the evidentiary attachments *** show[ ] that the petition's allegations are capable of corroboration and identify[ ] the sources, character, and availability of evidence alleged to support the petition's allegations." *Id.* Finding that Langford's affidavit met this standard, the court reversed and remanded for second-stage proceedings. *Id.* ¶ 48.

¶ 23    Walker contends that as in *Allen*, the fact that Powell's statement was unnotarized should not be considered in determining whether it constituted newly discovered evidence warranting second-stage proceedings. But, notarization aside, to repeat, Powell's affidavit fails to identify the alleged other shooter and fails even to allege that anyone, much less three people, were shot and killed. Indeed, when contrasted with the other details Powell recalls while witnessing the shooting, such as what he was eating at the time, his failure to mention that three people were killed casts doubt on its veracity.

¶ 24    Furthermore, the evidence offered by Walker does not amount to "such a conclusive character that it would probably change the result of retrial." *People v. Harris*, 206 Ill. 2d 293, 301 (2002). Horton's affidavit presents no new information pointing to actual innocence. Horton, an inmate who serves as a head law clerk at the same correctional facility as Walker, directly contradicts the record. Only claims not rebutted by the record can be taken as true.

- 6 -

*Barnslater*, 373 Ill. App. 3d at 519. Horton claims that he interviewed witnesses, including Andre Chalmers, who swear they saw Strickland shoot the victims; however at trial, Chalmers denied saying Strickland shot and killed his brother. Horton's statement about other witnesses accusing Strickland also contradicts the trial identifications of Walker as the shooter. Further, aside from a last name, neither Walker nor any witness during trial or afterward has presented any additional information about this alleged shooter, such as his first name, a physical description, an approximate age, when he died, or the relationship between him and the witnesses who supposedly accuse him of the crime. Horton attempts to undermine credibility of the State's witnesses by claiming that Poree told him that all of the witnesses and victims were intoxicated at the time of the shootings. But the record, which includes toxicology exams of the victims and trial testimony by the witnesses, rebuts this evidence.

¶ 25    Alternatively, if the statements are construed as witness recantation of trial testimony, then they would constitute improper hearsay. "Affidavits containing hearsay are insufficient to support a claim under the Act." *People v. Brown*, 2014 IL App (1st) 122549, ¶ 58. Instead, Horton only raises a generic claim that reargues the trial evidence and provides no evidence giving insight on Strickland's identity or whereabouts. He claims that Charles Poree identified Strickland as the shooter to the original defense attorney, but provides nothing to back this up. Horton's affidavit contains no colorable claim.

¶ 26    In addition, Walker contends Powell's statement directly contradicts the testimony of the three eyewitnesses and suggests someone other than him, presumably Strickland, was the shooter. Powell's statement does serve to support Walker's alibi defense that he was in Momence at the time of the shooting, an alibi rejected by the jury. Further, the lack of detailed information in Powell's statement undermines its credibility. Powell's statement reveals no insight as to how he knew Walker, no description of the shooter, and no hint of Powell's whereabouts immediately after the crime or intervening 27 years. Instead, Powell offers a very general description of the perpetrator and does not identify Strickland as the shooter but merely recites that Walker "was not the gunman I saw on April 30, 1985." Additionally, while Powell states that Walker was not the gunman, he does not rule out Walker's involvement in the crime, leaving open the possibility of Walker being the driver or the backseat passenger.

¶ 27    Accordingly, we affirm the trial court's dismissal of Walker's postconviction claim.

¶ 28    Affirmed.

¶ 29    PRESIDING JUSTICE PUCINSKI, dissenting.

¶ 30    With respect, I disagree that the trial court's denial of a successive postconviction petition should be affirmed. I would reverse and remand.

¶ 31    Notwithstanding the dramatics of the assistant State's Attorney at oral argument, this defendant has a right to file for leave to file a successive postconviction petition.

¶ 32    This is his third *pro se* postconviction petition. *Pro se* petitions are not expected to be perfect, nor are they required to prove a point; they are only required to show that they could prove a point.

¶ 33    This defendant has been saying all along that he is innocent and that someone named "Strickland" was the actual shooter. Now he has found an actual witness to the shooting, a

witness who, in his affidavit, states that he knew the defendant at the time of the shooting and knows that the defendant is not the shooter.

¶ 34 The State argues that he should have known about his new witness before this, but it does not say how a man in prison is supposed to find out about potential witnesses; the defendant, on the other hand, has a reasonable explanation–that any witnesses out there were afraid to come forward while Strickland was alive, but since Strickland is now dead, they are not afraid anymore. How was defendant supposed to have known that a man, Tyrone Powell, at a McDonald's the night of the crime saw the whole thing?

¶ 35 The majority holds that the defendant's *pro se* postconviction petition does not explain why he could not find a witness for 30 years–all the more reason to send it back, get to the second stage and have an attorney amend his petition. When *pro se* petitions are not perfect, the opportunity to amend them to fix the problem should be routine. We should not expect a *pro se* defendant to know or foresee all of the puzzle pieces and get them right the first time.

¶ 36 The State argues that his petition and affidavits are not complete. No surprise. He is acting *pro se* with the help of a prison paralegal, whose skill set is unknown.

¶ 37 For the postconviction petition process of this state to have any rational connection to reality, petitioners should be allowed to advance to the second stage, where with the help of attorneys they can file amended petitions and affidavits that cure the problems of their *pro se* documents. To provide a right to file without any meaningful assistance and then say: "Oh, well, you did it wrong, too bad," should be unacceptable, not the norm, especially since the State provides counsel to handle the appeal after the *pro se* petition is denied.

¶ 38 The State argues that this defendant has already filed two prior postconviction petitions: yes, he has, and both of them *pro se*, and both of them denied. So in effect, we are asked to hold it against him that he keeps trying to prove he is innocent. I wonder if the State, then, expects a defendant who is innocent to just give up and not keep trying.