2021 IL App (1st) 200469-U

SECOND DIVISION
June 22, 2021

No. 1-20-0469

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| | ) | Cook County. |
| v. | ) | |
| | ) | No. 14 CR 03816 |
| CHARLES CHEW, | ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) | Thomas J. Byrne, |
| | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Pucinski and Cobbs concurred.

**O R D E R**

¶ 1    *Held*:  The circuit court properly denied the defendant's *pro se* pleading to correct his mittimus entered after a guilty plea, where the record revealed that the defendant was apprised of the exact number of sentencing credit days that he would receive under his negotiated plea agreement and nonetheless persisted in his plea.

¶ 2    The defendant, Charles Chew, appeals from the circuit court's order denying his motion to correct the mittimus to reflect additional presentence custody credit.   On appeal, he contends that

the circuit court erred in denying his motion where the additional days were part of his negotiated plea agreement. For the following reasons, we affirm.

¶ 3                                          I. BACKGROUND

¶ 4        On February 28, 2014, the defendant was charged in a 12-count indictment with four counts of home invasion, two counts of armed robbery, two counts of aggravated battery, three counts of aggravated unlawful restraint and one count of residential burglary.

¶ 5        On April 26, 2016, the defendant entered into a negotiated plea agreement with the State. The circuit court began the plea hearing by asking the parties whether they had reached an agreement. The State responded in the affirmative and indicated that under the plea agreement, in exchange for the defendant's plea to one count of home invasion (720 ILCS 5/12-11(a)(2) (West 2010)) and one count of armed robbery with a dangerous weapon (*i.e*., a bludgeon), the defendant would be sentenced to concurrent terms of 15 years' imprisonment and the State would dismiss the remaining ten charges against him.

¶ 6        After defense counsel acknowledged that these were the terms of the negotiated plea agreement, the court inquired into the defendant's age and prior criminal background. The defendant stated that he was 30 years old and the State offered evidence of his two prior felony convictions in Wisconsin: (1) "second degree recklessly endangering safety using a weapon;" and (2) "neglecting a child."

¶ 7        The court then advised the defendant that it would go along with the parties' agreement, stating:

      "If you were to plead guilty to Count 2, home invasion and Count 6, armed

      robbery, both Class X felonies, I would sentence you to 15 years in the Illinois

      Department of Corrections, three years mandatory supervised release, fines

and costs $479 and I'll credit you with 1184 days credit towards your sentence.

The remaining counts would be nolled, dismissed pursuant to the agreement."

The court then asked the defendant if he understood the terms of the agreement and the defendant indicated that he did.

¶ 8 After determining that the defendant had no questions about the plea agreement, the court informed the defendant of the specifics of the two charges of home invasion and armed robbery and the potential penalties for both. The court also explained to the defendant his rights to a trial and separately jury trial. The defendant waived both rights, acknowledged that he understood the charges and the possible penalties and then pleaded guilty to both offenses.

¶ 9 The State next presented the following stipulated factual basis for the plea. At about 10:50 p.m., on February 24, 2011, together with codefendant Clarence Sawyer, the defendant entered the residence of Derrick Gleason and Alyssa Smith at 6228 South Western Avenue, Apartment 205. Smith and Gleason were inside the residence with a minor child. The defendant, who was in possession of a dangerous weapon (*i.e.*, a bludgeon) ordered Gleason onto the floor, duct taped him and struck him, causing swelling and bruising. The defendant demanded money and drugs, and then took a TV, Play Station and a 32-caliber gun belonging to Gleason. Smith recognized the codefendant as her ex-boyfriend and the defendant as his cousin. The defendant was arrested on November 5, 2012, in Sheboygan, Wisconsin, for an unrelated shooting. During that arrest two guns were recovered, one from the defendant. The defendant was arrested on the instant matter by the Chicago Police Department (CPD) on January 29, 2014, whereupon he made admissions to police detectives about the home invasion. Smith positively identified the defendant in a lineup. The defendant has been in custody from November 5, 2012, until the day he was taken by the CPD. The defendant is not a police officer in the line of duty and had no permission or authority

to be inside the residence on Western Avenue or to take any items therefrom.

¶ 10    After hearing the factual basis, the circuit court accepted the defendant's plea, and entered a finding of guilty on both the home invasion and armed robbery counts.

¶ 11    Prior to announcing the sentence, the court accepted the defendant's waiver of the presentence investigation (PSI) report and informed the defendant that in imposing the sentence it would "go along with the agreement [the defendant's] lawyer ha[d] worked out on [his] behalf with the State." The court then sentenced the defendant to two concurrent terms of 15 years' imprisonment and three years of mandatory supervised release on each count.

¶ 12    At this point in the proceedings, the State indicated that it would "have to change the credit." As the prosecutor explained: "I calculated from 2013, [the defendant] actually was taken into custody by *** CPD in 2014, so its 819 days, sorry." The prosecutor further stated that the 819 days were calculated form the date when CPD took custody of the defendant, after he left Wisconsin, where he was being held on an unrelated charge. After some disagreement between the parties and further discussion with the court, defense counsel agreed that the CPD had the defendant in their custody for only 819 days and that therefore this was the amount of sentencing credit owed to the defendant. The circuit court then granted the defendant those 819 days of credit. The court then asked the defendant if he understood the sentence and the credit and the defendant indicated that he did.

¶ 13    The defendant did not object to the imposition of the 819 days of credit and did not file a motion to withdraw his guilty plea. Instead, he filed a late notice of appeal, which we granted on June 23, 2016. The State Appellate Defender appointed to represent the defendant on appeal subsequently filed a motion for summary disposition, arguing that the defendant's due process rights were violated because he did not receive the sentencing credit negotiated under his plea

4

agreement, and that the case should be remanded to the circuit court for further proceedings. The State filed a response opposing the defendant's motion for summary disposition, arguing that the procedural posture of the case did not allow the proposed remedy. In its motion, the State explicitly "agree[d] that [the] defendant was entitled to 1184 days of credit toward his sentence because the trial court promised this before accepting his guilty plea," but nonetheless asserted that the proper procedural avenue was for the defendant to file amotion to withdraw his plea in the circuit court or alternatively to file a postconviction petition.

¶ 14    On March 20, 2018, we denied the defendant's motion for summary disposition of the appeal. The State Appellate Defender subsequently filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967) on the basis that the appellate court had no jurisdiction to consider the merits of the defendant's appeal where the defendant never filed a motion to withdraw his guilty plea. We granted the State Appellate Defender's motion to withdraw on December 19, 2018. *People v. Chew*, No. 1-16-1647 (2018) (unpublished order pursuant to Illinois Supreme Court Rule 23)

¶ 15    On January 15, 2019, the defendant filed a *pro se* motion for a correction of the mittimus asserting that he was entitled to 1184 days of presentencing credit under his negotiated plea agreement. After conferring with the State, on April 25, 2019, the circuit court removed the motion from the court call.

¶ 16    On October 24, 2019, the defendant filed the instant *pro se* motion to correct the mittimus, alleging the same error and noting that his first motion had not been ruled upon.

¶ 17    On January 9, 2020, the circuit court held a hearing on the defendant's *pro se* motion.[1]

---

[1] It is unclear from the record whether the defendant was present for this hearing. While the cover sheet for the transcript of this proceedings lists the defendant under "appearances," there are no arguments or

During the hearing, the State argued that the defendant's motion should be dismissed because even though "there was mention of a number of 1184" days credit, the actual credit imposed was "clarified later" to the defendant. Specifically, the State asserted that: (1) the defendant received all of the credit he was legally entitled to; (2) the circuit court explained the credit calculations to the defendant at the time it imposed the sentence; (3) defense counsel agreed to the 819 days imposed; and (4) the defendant chose to continue with his plea.

¶ 18     Following the State's argument, the circuit court denied the defendant's motion. The court found that the defendant was not seeking to withdraw his plea, and that his intention remained to get the benefit of his plea bargain. The court acknowledged that "[d]uring the course of the plea," it had "misstate[d]" the amount of credit that would be given, but held that this was nonetheless "addressed and corrected at the time [it] imposed the sentence." The defendant now appeals.

¶ 19                                  II. ANALYSIS

¶ 20     On appeal, the defendant contends that he was denied due process where he did not receive the benefit of his plea bargain. He argues that he received less time credit against his sentence than originally stated in his plea agreement and therefore seeks the reversal of the circuit court's denial of his motion to correct the mittimus.[2]

---

statements by the defendant anywhere on the record. In fact, during the hearing, the circuit court solely addressed the defendant's family member, Donna Nichols, and asked her if the defendant had an attorney to which she responded in the negative. In addition, after ruling on the motion the court asked the clerk to "notify the defendant within ten days."

[2] We note that while the defendant is not currently incarcerated, he is serving his term of mandatory supervised release. Accordingly, this appeal has bearing on the amount of time he "could be

¶ 21    Before addressing the merits of the defendant's argument, we must first determine whether we have jurisdiction to consider this appeal. *People v. Thompson*, 2015 IL 118151, ¶ 26. The parties agree that if the circuit court had no jurisdiction to consider the defendant's motion to correct the mittimus, this court would also lack jurisdiction to review the denial of that motion. *People v. Blancas*, 2019 IL App (1st) 171127, ¶ 17. Accordingly, we must first determine whether the circuit court had jurisdiction to consider the motion as pleaded.

¶ 22    "Normally, the authority of a trial court to alter a sentence terminates after 30 days' following the entry of a final judgment. *People v. Flowers*, 208 Ill. 2d 291, 303 (20003). "This 30-day limitation is incorporated into Rule 604(d), which governs postjudgment motions in cases *** where the defendant has pleaded guilty." *Id*. "The only continuing power the circuit court possess[es] over the case [is] limited to enforcement of the judgment or correction of clerical errors or matters of form so that the record conform[s] to the judgment actually rendered." *Id*. 306-07.

¶ 23    Illinois Supreme Court Rule 472(a) governs when "the circuit court retains jurisdiction to correct" such clerical errors or matters of form. Ill. S. Ct. R. 472(a) (eff. March 1, 2019). Specifically Rule 472(a) provides that even after the 30 days have elapsed, the circuit court retains jurisdiction to correct the following errors:

"(1) Errors in the imposition or calculation of fines, fees, assessments, or costs;

(2) Errors in the application of *per diem* credit against fines;

(3) Errors in the calculation of presentence custody credit; and

(4) Clerical errors in the written sentencing order or other part of the record resulting in a

reincarcerated for a violation of the conditions of" his release. *People v. Jackson*, 199 Ill. 2d 286, 294 (2002).

discrepancy between the record and the actual judgment of the court." *Id.*

¶ 24    In the present case, the State contends, and we agree that, even though the defendant's argument is premised on an error related to his presentence custody credit, Rule 471(a)(3) is nonetheless inapplicable.   Here, the defendant does not argue that there was an error "in the calculation" of his sentencing credit.   Rather he asserts that he was denied due process because there is a disagreement between the amount of credit he bargained for, during the plea negotiations, and the credit he received as part of his plea.   Accordingly, where the motion to correct the mittimus is premised on a due process argument and the defendant did not file that motion within 30 days of the imposed sentence, the circuit court did not have jurisdiction to hear the defendant's motion to correct the mittimus. See *Blancas*, 2019 IL App (1st) 171127, ¶ 17 (finding the circuit court lacked jurisdiction to hear a motion to correct the mittimus that made a substantive claim not based on miscalculation). Because the circuit court lacked jurisdiction to rule on the motion, we lack jurisdiction to review the denial of the motion as well.  See *Id.* ¶ 17 (Where the circuit court "lacks jurisdiction, so do we").

¶ 25    The defendant, nonetheless, asserts and the State agrees, that we have jurisdiction to consider the merits of this appeal, if we construe the circuit court's denial of the defendant's motion to correct the mittimus as a summary dismissal of a *pro se* postconviction petition.  In this respect, the defendant contends, and the State concurs, that the circuit court had the discretion to and should have to "recharacterize[d]" his "*pro se* filing as a postconviction petition" even where the *pro se* pleading was "clearly labeled" as something else.   *Blancas*, 2019 IL App (1st) 171127, ¶ 20, see also *People v. Shellstrom*, 216 Ill. 2d 45, 51 (2005).  Because the State concedes that the circuit court should have reconstrued the defendant's *pro se* motion as a postconviction petition, we find that we have jurisdiction to address the merits of this appeal pursuant to the Postconviction Hearing

Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018))

¶ 26    It is axiomatic that the Act provides a three-step process by which a convicted defendant may assert a substantial denial of his or her constitutional rights in the proceedings that led to the conviction. *People v. Edwards*, 2012 IL 111711, ¶ 21; *People v. Tate*, 2012 IL 112214, ¶ 8; see also *People v. Walker*, 2015 IL App (1st) 130530, ¶ 11 (citing *People v. Harris*, 224 Ill. 2d 115, 124 (2007)). A proceeding under the Act is a collateral attack on a prior conviction and sentence and is therefore "not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994); see *Edwards*, 2012 IL 111711, ¶ 21; *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). Accordingly, any issues that were decided on direct appeal are *res judicata*, and any issues that could have been presented on direct appeal, but were not, are waived. *Edwards*, 2012 IL 111711, ¶ 21; see also *People v. Ligon*, 239 Ill. 2d 94, 103 (2010); *People v. Reyes*, 369 Ill. App. 3d 1, 12 (2006).

¶ 27    At the first stage of postconviction proceedings, such as here, the circuit court must independently review the petition, taking the allegations as true and determine whether " 'the petition is frivolous or is patently without merit.' " *People v. Hodges*, 234 Ill. 2d 1, 10 (2009) (quoting 725 ILCS 5/122-2.1(a)(2) (West 2006)); see also *Tate*, 2012 IL 112214, ¶ 9. At this stage, the court may not engage in any factual determinations or credibility findings. See *People v. Plummer*, 344 Ill. App. 3d 1016, 1020 (2003) ("[t]he Illinois Supreme Court *** [has] recognized that factual disputes raised by the pleadings cannot be resolved by a motion to dismiss at either the first stage *** or at the second stage [of postconviction proceedings] but, rather, [they] can only be resolved by an evidentiary hearing"); see also *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998) (noting that the supreme court has "foreclosed the circuit court from engaging in any fact-finding at a dismissal hearing because all well-pleaded facts are to be taken as true at this point in the

proceeding"). Instead, the court may summarily dismiss the petition only if it finds the petition to be frivolous or patently without merit. See *People v. Ross*, 2015 IL App (1st) 120089, ¶ 30; see also *Hodges*, 234 Ill. 2d at 10. A petition is frivolous or patently without merit if it has no arguable basis either in law or in fact. *Tate*, 2012 IL 112214, ¶ 9. Our supreme court has explained that a petition lacks an arguable basis where it "is based on an indisputably meritless legal theory or a fanciful factual allegation"—in other words, an allegation that is "fantastic or delusional" or is "completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16-17; *People v. Brown*, 236 Ill. 2d 175, 185 (2010); see also *Ross*, 2015 IL App (1st) 120089, ¶ 31. Our review of summary dismissal is *de novo*. *Tate*, 2012 IL 112214, ¶ 10.

¶ 28    In the present case, the defendant argues that the circuit court should not have summarily dismissed his *pro se* pleading where he stated an arguable claim that he was denied due process when the circuit court credited him with only 819 days, and he entered his plea on the consideration that he would be given 1184. The defendant points out that during his direct appeal, in response to his request for a summary disposition, the State itself acquiesced that under *People v. Whitfield*, 217 Ill. 2d 177, 183-84 (2005), he was entitled to the 1184 days of sentencing credit, but then maintained that the proper remedy was for him to file either a motion to withdraw his plea or a postconviction petition. The defendant therefore asserts that his petition is neither frivolous or patently without merit and that he should be permitted to proceed with his due process claim.

¶ 29    In response, the State acknowledges that during the defendant's direct appeal, it conceded that the defendant was entitled to 1184 days credit. Nonetheless, the State now changes course and asserts that regardless of its prior concession, the record below affirmatively rebuts the defendant's claim that the amount of sentencing credit was an essential bargained for term of his plea deal. According to the State, the defendant persisted in his plea deal even after the sentencing

credit was changed and the change was explained to him. The State therefore maintains that the defendant's due process claim is patently without merit. For the following reasons, we agree with the State.

¶ 30  A defendant may challenge the constitutionality of his guilty plea by claiming "(1) that the plea of guilty was not made voluntarily and with full knowledge of the consequences, and (2) that defendant did not receive the benefit of the bargain he made with the State when he pled guilty." *Whitfield,* 217 Ill. 2d 177, 183-84.

¶ 31  Fully negotiated guilty pleas are governed by principles of contract law. *People v. Absher,* 242 Ill. 2d 77, 87 (2011). " '[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' " (Emphasis omitted.) *Id.* at 185 (quoting *Santobello v. New York,* 404 U.S. 257, 262 (1971)). In other words, where a defendant enters a negotiated plea of guilty in exchange for specified benefits, "*both the State and the defendant* must be bound by the terms of the agreement." (Emphasis in original.) *Whitfield,* 217 Ill. 2d at 190. A defendant's constitutional right to due process and fundamental fairness is violated if he pleads guilty in exchange for a specific sentence, but receives a different, more onerous sentence than the one to which he agreed. *Id*. at 189.

¶ 32  Accordingly, "when a specified amount of sentence credit is included within the terms of a defendant's plea agreement with the State, the defendant is entitled to the amount of sentence credit promised." *People v. McDermott*, 2014 IL App (4th) 120655, ¶ 27; see also *People v. Lenoir*, 2013 IL App (1st) 113615, ¶¶ 12-13; *People v. Clark*, 2011 IL App (2d) 091116, ¶ 1. This is true even if the credit sought to be imposed is not statutorily authorized. See *Clark*, 2011 IL App (2d) 091116, ¶ 1-2 (holding that the defendant was entitled to the bargained for sentencing credit even where the statute governing the credit did not permit double credit for time served for

consecutive sentences and our supreme court in *People v. Latona*, 184 Ill. 2d 260, 271 (1998), interpreted that statute to mean that offenders serving consecutive sentences could only be given a single credit for each day served); *Lenoir*, 2013 IL App (1st) 113615, ¶¶ 12-13 (same); see also *Whitfield*, 217 Ill. 2d at 201 ("a present inability to fulfill a promise does not mean a breach of the plea agreement has not occurred.")

¶ 33    Similarly, under reverse circumstances, a defendant may not seek to have sentencing credit applied when he agreed to forgo credit as part of a plea or other sentencing agreement.  See *People v. Grant*, 2015 IL App (4th) 140971, ¶¶ 22-30; *People v. Williams*, 384 Ill. App. 3d 415, 417 (2008); *People v. Evans*, 391 Ill. App. 3d 470, 473 (2009).

¶ 34    In the present case, the defendant pleaded guilty pursuant to a negotiated plea agreement. That agreement required the defendant to plead guilty to home invasion and armed robbery in exchange for the imposition of 15-year sentences imposed on each count, to be served concurrently, with credit for time served.  Although during the plea hearing the circuit court initially stated that the defendant would be entitled to 1184 days of sentencing credit, before imposing the sentence, the State informed the court that it had made an error in calculating that credit.  After a discussion regarding the time that the defendant had spent in custody in Illinois versus Wisconsin, where he was being held on an unrelated charge, the parties agreed that legally the defendant was entitled to only 819 days of sentencing credit.  The defendant was then explicitly asked whether he understood that this would be the credit imposed as part of his sentence, and he indicated that he did.  The defendant at no time raised an objection to the sentencing credit or indicated he wanted to withdraw his plea on the basis of this newly calculated credit.  The defendant therefore acquiesced in the sentence and persisted in his guilty plea.  Accordingly, we are compelled to conclude that the defendant's claim that he was denied

the benefit of the bargain is "completely contradicted by the record." *Hodges*, 234 Ill. 2d at 16-17; *Brown*, 236 Ill. 2d 175, 185; see also *Ross*, 2015 IL App (1st) 120089, ¶ 31; see also *Grant*, 2015 IL App (4th) 140971, ¶¶ 22-30.

¶ 35    In coming to this conclusion, we have considered the decisions in *McDermott*, 2014 IL App (4th) 120655, *Clark*, 2011 IL App (2d) 091116, and *Lenoir*, 2013 IL App (1st) 113615, cited to by the defendant and find them inapposite.

¶ 36    In *McDermott,* the defendant pleaded guilty in Champaign County to aggravated battery, with an agreed-upon sentence of 5 years' imprisonment and credit for 222 days served. Thereafter, the defendant pleaded guilty in McLean County to unlawful altering of a title document, with an agreed-upon sentence of 5 years' imprisonment and credit for 233 days served. Both sentences were to be served consecutively to sentences imposed in Henry County and Du Page County. *McDermott,* 2014 IL App (4th) 120655, ¶¶ 2–3, 7. During the plea hearings in both cases, the defendant attempted to stress or clarify that his sentencinf credit was "part of the sentence" or "part of the plea." (Internal quotation marks omitted.) *Id.* ¶ 12.  Both circuit courts confirmed the defendant would receive the specified amount of credit. *Id.* Thereafter, the defendant filed a postconviction petition, arguing he was denied the benefit of his bargain because the Illinois Department of Corrections (IDOC) refused to apply the presentence credit to his sentences. *Id.* ¶ 13.

¶ 37    On appeal, this court reversed the trial court's summary dismissal of the defendant's petitions.  We reasoned that "the record clearly shows the terms of the parties' agreements included specified amounts of sentence credit and the records in each case fail to reflect [the]

defendant was informed otherwise." *Id.* ¶ 30. However, we acknowledged:

> "[H]ad [the] defendant been informed during his plea hearings that his sentence credit
> would not be calculated as he anticipated and he persisted in his pleas, the result of these
> appeals could have been different. Under such circumstances, the record would likely
> show the specified amounts of sentence credit were not essential, bargained-for terms of
> [the] defendant's plea agreements." *Id.*

¶ 38 We therefore held that under the facts presented, the defendant did not receive the benefit of his bargain with the State where the record failed to show that he was informed he would not receive double credit. *Id.*

¶ 39 Likewise, in *Clark* and *Lenoir*, the defendants were never advised their sentencing credit would not be applied as they had anticipated. See *Clark,* 2011 IL App (2d) 091116, ¶¶ 5–6 (neither the State nor the trial court clarified the defendant would, in fact, receive a total credit of only 339 days—not 650—toward his aggregate sentence); *Lenoir,* 2013 IL App (1st) 113615, ¶ 12 (the trial court never informed the defendant he could not receive double credit for time served in custody prior to his plea). Since the records in *Clark* and *Lenoir* contained no evidence showing the specified amounts of credit were not essential, bargained-for terms of the plea agreement, the court held the defendants were entitled to the specified amounts of credit promised by the State. *Clark,* 2011 IL App (2d) 091116, ¶¶ 712; *Lenoir,* 2013 IL App (1st) 113615, ¶ 13.

¶ 40 Unliked the defendants in *McDermott, Clark,* and *Lenoir,* the defendant in the instant case was clearly aware of the consequences of his plea. After a full discussion on the record regarding the number of sentencing credit days to which he was entitled, the defendant was asked whether he understood that only 819 days of credit would be imposed, and he indicated

that he did.  Since after this admonition, the defendant persisted in his plea, the record contains evidence which clearly shows that he knew he would not receive 1184 days of sentencing credit. Accordingly, the record rebuts his contention that those 1184 days were essential, bargained-for terms of his negotiated plea agreement.  See *Grant*, 2015 IL App (4th) 140971, ¶¶ 22-30. As such, the defendant has not made an arguable claim that he was denied his due process rights and dismissal of his *pro se* pleading was proper.

¶ 41                                     IV.  CONCLUSION

¶ 42     For the aforementioned reasons, we affirm the judgment of the circuit court.

¶ 43     Affirmed.